UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE OSUNA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>OLIVIA LaVOICE, et al.,<br><br>　　　　Defendants.<br>　　　　　　　　　　　　/ | Case No. 1:24-cv-01122-KES-SKO<br><br>**FINDINGS AND RECOMMENDATIONS THAT THE ACTION PROCEED AS TO COUNTS 1, 3, 4, 6, 8, 9, 10, & 11 AND THAT COUNTS 2, 5, & 7 BE DISMISSED FOR FAILURE TO STATE A CLAIM**<br><br>(Doc. 25)<br><br><u>OBJECTIONS DUE: 21 DAYS</u> |

Plaintiff Jamie Osuna is proceeding *pro se* and *in forma pauperis* in this action. (Doc. 14.) Plaintiff commenced this action on September 20, 2024, (Doc. 1), and filed a First Amended Complaint on October 3, 2025. (Doc. 8.) On January 14, 2025, the undersigned ordered Plaintiff to show cause why the First Amended Complaint should not be dismissed for lack of subject matter jurisdiction, as Plaintiff had purported to plead diversity jurisdiction under 28 U.S.C. § 1332, but had not plead complete diversity of the parties. (*See* Doc. 15.)

Plaintiff timely filed a response on January 22, 2025. (Doc. 16.) That same day, Plaintiff filed a Second Amended Complaint ("SAC") raising the many of the same state-law claims, but also alleging federal question jurisdiction pursuant to 28 U.S.C. § 1331, based on a claim for copyright infringement pursuant to 17 U.S.C. § 501. (Doc. 17.) The undersigned discharged the order to show cause and screened the SAC, finding Plaintiff (1) had failed to state a claim under federal law as

Plaintiff had failed to allege registration under the Copyright Act and that therefore (2) there was no jurisdiction to review Plaintiff's pendant state law claims. (Doc. 18.) The undersigned granted Plaintiff leave to amend, (*id.*), and on February 20, 2025, Plaintiff filed his Third Amended Complaint ("TAC"). (Doc. 19.)

The undersigned screened the TAC and found that Plaintiff had not remedied the defects identified in the prior screening order. (Doc. 21.) Therefore, the undersigned recommended dismissal without further leave to amend. (*Id.*) Plaintiff timely objected contending he could allege registration if given further leave to amend, (Doc. 22), and the District Court adopted the undersigned findings and recommendations in part, dismissing the TAC but granting further leave to amend.

On August 25, 2025, Plaintiff filed his Fourth Amended Complaint ("FAC"), (Doc. 25), which is now before the undersigned for screening. For the reasons that follow, the undersigned recommends that this action proceed as to all but counts two, five, and seven and those counts be dismissed for failure to state a claim.

## I.    SCREENING AND PLEADING REQUIREMENTS

**A.    Screening Requirement**

In cases where the plaintiff is proceeding *in forma pauperis*, the Court is required to screen each case and shall dismiss the case at any time if the Court determines that the allegation of poverty is untrue, or that the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). *See also Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (dismissal required of *in forma pauperis* proceedings which seek monetary relief from immune defendants); *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss *in forma pauperis* complaint under 28 U.S.C. § 1915(e)); *Barren v. Harrington,* 152 F.3d 1193 (9th Cir. 1998) (affirming *sua sponte* dismissal for failure to state a claim). If the Court determines that a complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

2

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Plaintiff must allege a minimum factual and legal basis for each claim that is sufficient to give each defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. *See, e.g.*, *Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995); *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

In reviewing the *pro se* complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**B.     Federal Rule of Civil Procedure 8(a)**

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). In determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). Since Plaintiff is appearing *pro se*, the Court must construe the allegations of his complaint liberally and must afford Plaintiff the benefit of any doubt. *See Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were

3

not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).

Further, "a plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555 (citations omitted); *see also Iqbal*, 556 U.S. at 678 (To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citations omitted)).

## II.  EVALUATION OF PLAINTIFF'S COMPLAINT

### A.  Plaintiff's Claims

In his 53-page fourth amended complaint ("FAC"), Plaintiff brings claims for (1) copyright infringement (17 U.S.C. § 501 et seq.), (2) unauthorized likeness (Cal. Civ. Code § 3344), (3) libel and libel per se (Cal. Civ. Code § 45), (4) privacy violation (Cal. Const. art. I, § 1), (5) unauthorized medical info (Cal. Civ. Code. § 56.36(3)(A)), (6) false light placement (Second Restatement of Torts § 652(E)), (7) recission (Cal. Civ. Code. § 39, 1689), (8) intrusion upon seclusion (Second Restatement of Torts § 652B), (9) unfair competition (Cal. Bus. & Prof. Code § 17200, et seq.), (10) civil conspiracy (Cal. Common Law), and section 1983 conspiracy with a state actor (42 U.S.C. § 1983). (FAC at 13–26.)

Defendants are individuals and entities involved in the production and distribution of news, including an unauthorized allegedly defamatory podcast biography called "Man with a Thousand Faces" (MWATF). (FAC ¶ 3–8.) Plaintiff's allegations span from 2017 to present.[1]

---

[1] The Court recognizes that many of the dates alleged in the FAC may very well raise statute of limitations issues and that Plaintiff seeks tolling based on (1) California Code of Civil Procedure § 352, which provides for tolling where a person is lacking legal capacity; (2) section 352.1, which provides for tolling by disability of imprisonment; as well as (3) equitable tolling.

As to section 352.1, the undersigned finds that that section, as a matter of law, does not apply to Plaintiff's claims. Section 352.1 states

> If a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335), is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal

4

B.      **Plaintiff's Federal Claims**

Plaintiff alleges two federal claims against Defendants. Count one alleges copyright infringement under the Copyright Act and count eleven alleges conspiracy with a state actor under 42 U.S.C. § 1983.

1.      Copyright Infringement (17 U.S.C. § 501, et seq.)

Count one of Plaintiff's FAC alleges that Defendants infringed upon several of Plaintiff's copyrighted works—specifically letters, artwork, a 2017 interview, and a photo. (FAC ¶¶ 52–55).

"To prove copyright infringement, a plaintiff must demonstrate (1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant." *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991).

As to the first element, the Supreme Court has held that "before pursuing an infringement claim in court . . . a copyright claimant generally must comply with § 411(a)'s requirement that 'registration of the copyright claim has been made.'" *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019) (quoting § 411(a)). "Therefore, although an owner's rights exist apart from registration, *see* § 408(a), registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights". *Id.* Though, the Supreme Court has also held that "upon registration of the copyright . . . a copyright owner can recover for infringement that occurred both before and after registration." *Fourth Est. Pub. Benefit Corp.*, 586 U.S. at 29.

---

court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years.

Cal. Code Civ. Pro. § 352.1. By the text of the statute, Plaintiff is not entitled to tolling by disability of imprisonment because he is currently serving a life sentence without the possibility of parole, *see California Incarcerated Records and Information Search (CIRIS)*, https://ciris.mt.cdcr.ca.gov/details?cdcrNumber=BD0868 (CDRC Number BD0868); Judicial notice may be taken of court records, public records, and administrative materials; *Tubach v. Lahimore*, No. 1:10-CV-913 AWI SMS, 2012 WL 4490792, at *3 (E.D. Cal. Sept. 28, 2012) ("Judicial notice may be taken of court records, public records, and administrative materials."). *See Tsetse v. Campbell*, No. 1:24-CV-00275-CDB (PC), 2024 WL 4894622, at *2 (E.D. Cal. Nov. 26, 2024); *Brown v. Cnty. of Los Angeles*, 830 F. App'x 231 (9th Cir. 2020).

As to the issues of tolling under section 352 and equitable tolling, the undersigned finds that because determination of how the statute of limitations or any relevant equitable tolling may apply in a particular case is a question of fact, it is generally not appropriate to resolve those issues during screening. *See Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (holding that courts generally cannot decide the question of equitable tolling on a motion to dismiss). Therefore, the undersigned does not make further findings as to the relevant statutes of limitations or tolling.

5

Here, Plaintiff alleges ownership and registration of four copyrights and that Defendants "reproduced, distributed, and displayed these works without consent, continuing after registration and notice, rendering the infringement willful." (FAC ¶ 52). Construing the TAC liberally, the undersigned finds that Plaintiff's allegations state a cognizable claim for copyright infringement.

2.  <u>Deprivation of Civil Rights</u> (42 U.S.C. § 1983)

Count eleven of Plaintiff's FAC alleges that Defendant La Voice conspired with non-party state actor Danielle Peña Gonzales-Baltierra—an employee of the California Department of Corrections and Rehabilitation and sister of the victim in the case resulting in Plaintiff's first conviction—"to deprive Pl[aintiff] of his First, Sixth, Eighth, and Fourteenth [Amendment] rights." (FAC ¶¶ 110–19).

Section 1983 imposes civil liability on an individual who "under color [of state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A civil rights plaintiff suing a private individual under section 1983 must demonstrate that the private individual acted under color of state law; plaintiffs do not enjoy Fourteenth Amendment protections against "private conduct abridging individual rights." *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961). Section 1983 liability attaches only to individuals "who carry a badge of authority of a State and represent it in some capacity." *Monroe v. Pape*, 365 U.S. 167, 172 (1961), *overruled in part by Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). "In the typical case raising a state-action issue, a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action. This may occur . . . sometimes if [the State] knowingly accepts the benefits derived from unconstitutional behavior." *Nat'l Collegiate Athletic Ass'n. v. Tarkanian*, 488 U.S. 179, 192 (1988). Constitutional standards should be invoked only "when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n.*, 531 U.S. 288, 295 (2001) (quotations omitted) (emphasis in original).

A section 1983 plaintiff therefore must show that a defendant's actions are "fairly attributable" to the government. *Collins v. Womancare*, 878 F.2d 1145, 1151 (9th Cir. 1989). A

private individual's action may be "under color of state law" where there is "significant" state involvement in the action. *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir.1997). The Supreme Court has articulated four tests for determining whether a private individual's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test. *Id.* Only the joint action test is relevant to Plaintiff's allegations.

Under the joint action test, "courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1453 (10th Cir. 1995) (citing *Collins*, 878 F.2d at 1154). The test focuses on whether the state has "so far insinuated itself into a position of interdependence with [the private actor] that it must be recognized as a joint participant in the challenged activity." *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 507 (9th Cir. 1989) (quoting *Burton*, 365 U.S. at 725). A plaintiff may demonstrate joint action by proving the existence of a conspiracy or by showing that the private party was "a willful participant in joint action with the State or its agents." *Collins*, 878 F.2d at 1154 (quotations omitted). To be liable as co-conspirators, each participant in a conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989). To be liable as a co-conspirator, a private defendant must share with the public entity the goal of violating a plaintiff's constitutional rights. *Id.*; *see also Gallagher*, 49 F.3d at 1453–54 (holding that public university's acquiescence in private security team's pat-down searches of concert-goers did not establish state action under joint action test, despite shared goal of producing a profitable event). For a Plaintiff to successfully advance a joint action theory of liability, they are required to show "a substantial degree of cooperation before imposing civil liability for actions by private individuals that impinge on civil rights." *See Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002).

Here, Plaintiff alleges that Defendant LaVoice and non-party state actor Baltierra "acted in concert and jointly . . . in coordinating media coverage and inmate-directed narratives in a manner that deprived [him] of his First, Sixth, Eighth, and Fourteenth [Amendment] rights, as shown by threats Pl[aintiff] received from inmates specifically referencing Baltierra and LaVoice's coverage."

7

(FAC ¶ 110). Plaintiff also alleges that Defendant LaVoice and non-party state actor Baltierra "agreed to disseminate knowingly false, inflammatory, and unsupported allegations . . . to incite inmate hostility toward Pl[aintiff] and place him at substantial risk of serious harm [that b]oth [Defendant LaVoice and Baltierra] knew from their professional experience [would] uniquely endanger [him] and would provoke targeted threats and violence." (*Id.* ¶ 111). As to allegations that go to the existence of a shared goal to violate Plaintiff's rights—including by inciting violence against him—Plaintiff alleges Baltierra appeared on a public interview with Defendant LaVoice, "stating [Baltierra] 'researched' [Plaintiff's] future life in prison before extending it" in the form of a plea bargain that "[Defendant] LaVoice publicly claimed she helped facilitate." (*Id.* ¶ 16).

As to acts taken in furtherance of that conspiracy, Plaintiff alleges that "[Defendant LaVoice and Baltierra] repeatedly promoted . . . sex-crime and child abuse allegations—contradicting official reports and lacking factual substantiation." (*Id.*) Plaintiff also alleges that "[t]hrough coordinated work on MWATF and Sword and Scale, LaVoice omitted exculpatory facts, case doubt on Pl[aintiff]'s § 1983 filings, and advanced Baltierra's stated objective of 'shedding light' on [another pending case against Plaintiff]." (*Id.* ¶ 116). Finally, Plaintiff alleges that "[w]hile employed by CDCR, Baltierra violated policy by failing to report LaVoice's possession of sealed materials and instead facilitated their use in interviews." (*Id.* ¶ 118). Most importantly, Plaintiff alleges that Baltierra acted "under color of law, by leveraging CDCR authority and access (inmates, housing/transfer, and sealed-materials policy) to further the scheme" to incite violence against Plaintiff in a way that "made [Defendant] LaVoice a joint state actor." (*Id.*)

Construing the TAC liberally, the undersigned finds that Plaintiff's allegations state a cognizable section 1983 claim against Defendant LaVoice.

**C.     Plaintiff's State Law Claims**

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims that are so related to claims within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). The undersigned finds that Plaintiff's alleged state law claims form parts of the same case or controversy and, therefore,

8

recommends the Court exercise jurisdiction over Plaintiff's state law claims. However, the undersigned further recommends the Court find that Plaintiff has not stated a claim as to counts two, five, and seven.

1. <u>Unauthorized Use of Likeness</u> (Cal. Civ. Code § 3344)

Count two of Plaintiff's FAC alleges Defendants committed the statutory tort of unauthorized use of likeness. (FAC ¶¶ 56–61). In addition to a common law cause of action,[2] California also has a statutory cause of action for misappropriation of likeness. *See* Cal. Civ. Code § 3344. The statutory cause of action complements rather than codifies common law misappropriation, *see Lugosi v. Universal Pictures*, 603 P.2d 425, 428 n.6 (Cal. 1979), and lies where the plaintiff can show that another "knowingly" used his or her "name, . . . photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without [the plaintiff's] prior consent. Cal. Civ. Code § 3344(a)).

Like the common law cause of action, the statutory cause of action specifically exempts from liability the use of a name or likeness in connection with the reporting of a matter in the public interest. *See* Cal. Civ. Code § 3344(d) (providing that no prior consent is required for "use of a name, . . . photograph, or likeness in connection with any news[ or] public affairs"). *Id.* And this exception "has been construed broadly to protect the valid exercise of First Amendment rights." *McKinney v. Morris*, No. B240830, 2013 WL 5617125, at *19 (Cal. Ct. App. Oct. 15, 2013).

Examining Plaintiff's allegations, the undersigned finds that this statutory exemption applies despite Plaintiff's conclusory allegations that "LaVoice knowingly used Pl[aintiff]'s name, private photos, and voice in MWATF and related promotional content, beyond any news reporting function," (FAC ¶ 56), and that "KGET17 likewise used Pl[aintiff]'s likeness beyond any news reporting function without authorization in connection with the creation, distribution, and marketing of MWATF through video segments, social media, headlines, thumbnails, audio clips, and press

---

[2] Under California common law, a cause of action for common law misappropriation of a plaintiff's name or likeness may be pled by alleging: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Eastwood v. Superior Court*, 198 Cal. Rptr. 342, 347 (Cal. App. Ct 1983).

9

releases. These uses were commercial in nature and designed to drive revenue and engagement," (*id.* ¶ 57).  A court need not credit conclusory allegations, *see Iqbal*, 556 U.S. at 678, and here it is clear that Defendants' use of Plaintiff's likeness falls squarely within section 3344(d)'s exceptions for use in connection with both news and public affairs.  Therefore, the undersigned recommends the Court dismiss Plaintiff's claim for unauthorized use of likeness for failure to state a claim as a matter of law.

2. <u>Libel & Libel Per Se</u> (Cal. Civ. Code § 45)

Count three of Plaintiff's FAC alleges libel and libel per se.  (FAC ¶¶ 62–73.)  In California, defamation is a claim based on an injury to one's reputation and can be based on an injury stemming from libel or slander.  *See* Cal. Civ. Code §§ 44, 45.  Under California law:

> The tort of defamation involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage. The publication must be an intentional publication of a statement of fact. The defamatory statement must specifically refer to, or be of and concerning, the plaintiff.

*Redfearn v. Trader Joe's Co.*, 230 Cal. Rptr. 3d 98, 112 (Cal. Ct. App. 2018), *as modified on denial of reh'g* (Mar. 16, 2018) (citations omitted); *see also Akmal v. Walgreens Co.*, No. 120CV01015DADSKO, 2022 WL 358427, at *6 (E.D. Cal. Feb. 7, 2022).

Libel "on its face[,]" or per se, involves a falsehood in which the defamatory nature is apparent "without the necessity of explanatory matter."  Cal. Civ. Code § 45a.  This may include a false allegation that a plaintiff is guilty of a crime.  *Fashion 21 v. Coal. for Humane Immigrant Rts. of Los Angeles*, 12 Cal. Rptr. 3d 493, 497 (Cal. Ct. App. 2004), *as modified on denial of reh'g* (May 18, 2004) (citing *Weinberg v. Feisel*, 2 Cal. Rptr. 3d 385, 395 (Cal. Ct. App. 2003)).  If libel is not per se, it is not actionable unless the plaintiff proves he suffered special damages, as defined in section 48a of the California Civil Code, as a proximate result thereof.  Cal. Civ. Code § 45a.  The undersigned finds that this rule is applicable to the present case as here, Plaintiff alleges that Defendant LaVoice published false and defamatory allegations implying that Plaintiff was a "child murderer."  (FAC ¶ 62.)  Construing the TAC liberally, the undersigned finds that Plaintiff's allegations state a cognizable claim for libel and libel per se.

//

3. <u>Privacy Violation</u> (Cal. Const. Art. I, § 1)

Plaintiff's fourth cause of action is brought under the California Constitution alleging a violation of privacy. (FAC ¶¶ 74–80.) The California Constitution creates a right protecting individuals from the invasion of their privacy by private parties. *Am. Acad. of Pediatrics v. Lungren*, 940 P.2d 797, 808–09 (Cal. 1997); *Leonel v. Am. Airlines, Inc.*, 400 F.3d 702, 711–12 (9th Cir. 2005), *opinion amended on denial of reh'g*, 03–15890, 2005 WL 976985 (9th Cir. Apr. 28, 2005).

The elements of a California Constitutional right to privacy claim require a plaintiff to establish (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest. *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633, 657 (Cal. 1994). While these elements are not a categorical test, they do operate to "weed out claims that involve so insignificant or de minimis an intrusion on a constitutionally protected privacy interest as not even to require an explanation or justification by the defendant." *Loder v. City of Glendale*, 927 P.2d 1200 (Cal. 1997). "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 865 P.2d at 655. Thus, if the allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Pioneer Electronics, Inc. v. Sup. Ct. of L.A.*, 150 P.3d 198 (Cal. 2007) (citing *Hill*, 865 P.2d at 633).

Here, Plaintiff alleges that Defendant LaVoice disclosed "intimate, sensitive, and personal facts not of legitimate public concern," (FAC ¶ 74)—specifically "sexual details" related to the circumstances surrounding the conception of Plaintiff's child, as well as "hearsay" regarding claims that Plaintiff was sexually molested," (FAC ¶ 75). Construing the TAC liberally, the undersigned finds that Plaintiff's allegations state a cognizable claim for a privacy violation.

4. <u>Unauthorized Medical Info Use</u> (Cal. Civ. Code § 56.36(a))

Count five of Plaintiff's FAC alleges Defendants are liable under California Civil Code § 56.36(a) for the unauthorized use of medical information. (FAC ¶¶ 81–86.) Plaintiff contends that this provision "prohibits unauthorized use of disclosure of medical information regardless of the

11

actor's profession." (FAC ¶82). While Plaintiff may be correct as to the broadness of the language of section 56.36 as to an actor's profession, section 56.36 is limited to acts taken "in violation of [Part 2.6, entitled Confidentiality of Medical Information]." Because Plaintiff has not alleged any such underlying violation, the undersigned finds that Plaintiff has failed to state a claim as a matter of law as to count five and recommends that this count be dismissed.

    5.    <u>False Light</u> (Second Restatement of Torts § 652E)

As to his sixth cause of action, Plaintiff purports to plead a claim of "False Light Placement," pursuant to the Second Restatement of Torts. (FAC ¶¶ 87–91.) The Court observes that the Plaintiff has not cited any authority for the proposition that the California courts have adopted the formulation of elements of false light as set forth in the Second Restatement. However, California does recognize the common law tort of false light. *See, e.g.*, *Jackson v. Mayweather*, 217 Cal. Rptr. 3d 234, 256 (Cal. Ct. App. 2017)

Construing Plaintiff's claim as one under California common law, "[f]alse light is a species of invasion of privacy, based on publicity that places a plaintiff before the public in a false light that would be highly offensive to a reasonable person, and where the defendant knew or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Jackson*, 217 Cal. Rptr. 3d at 256 (quoting *Price v. Operating Engineers Local Union No. 3*, 125 Cal. Rptr. 3d 220, 225 (Cal. Ct. App. 2011)).

The undersigned notes that, under California law, "[t]o establish a false light claim based on a defamatory publication, a plaintiff 'must meet the same requirements' as for a defamation claim." *Mitchell v. Twin Galaxies, LLC*, 285 Cal. Rptr. 3d 211, 220 (Cal Ct. App. 2021) (quoting *Balla v. Hall*, 273 Cal. Rptr. 3d 695, 726 (Cal. Ct. App. 2021)). While Plaintiff has separately brought a claim for libel, at least some of the factual basis for Plaintiff's claim of false light differs from that of his claim for libel and libel per se. Therefore, the undersigned will consider this claim separately applying the defamation standard.[3]

As to this claim, Plaintiff alleges that Defendant LaVoice "falsely portrayed Pl[aintiff]'s

---

[3] Plaintiff's allegations regarding Defendant LaVoice's "pairing of his jail image with 'child murderers,'" (FAC ¶ 87), is duplicative of his libel claims and therefore to the extent his claim of false light is based on those allegations his false light claim rises and falls with his libel claim. *See Jackson*, 217 Cal. Rptr. 3d at 256.

12

letters and artwork as unsolicited and obsessive—despite omitting that Pl][aintiff]'s communications were solicited by LaVoice herself" and "likened Pl[aintiff] to the 'Joker,' implied he viewed [Defendant LaVoice] as 'Harley Quinn,' and suggested manipulation" in a way that "knowingly misrepresented the truth." (FAC ¶ 87.) Construing the TAC liberally, the undersigned finds that Plaintiff's allegations state a cognizable claim of false light.

      6.     <u>Intrusion Upon Seclusion</u> (Second Restatement of Torts § 652B)

Plaintiff's seventh claim is for the tort of intrusion upon seclusion. (FAC ¶¶ 92–96.) Under California law, the claim for intrusion upon seclusion "has two elements: (1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person." *Shulman v. Grp. W Prods., Inc.*, 955 P.2d 469, 490 (Cal. 1998), *as modified on denial of reh'g* (July 29, 1998). The first question is thus "whether defendants intentionally intrude[d], physically or otherwise, upon the solitude or seclusion of another." *See id.* (quotation omitted). "[T]o prove actionable intrusion, the plaintiff must show the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff." *Id.* The intrusion must be intentional. *E.g.*, *Varnado v. Midland Funding, LLC*, 43 F. Supp. 3d 985, 992 (N.D. Cal. 2014). In determining the "offensiveness" of a challenged intrusion, courts consider, among other things, "the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Deteresa v. Am. Broad. Cos.*, 121 F.3d 460, 465 (9th Cir. 1997) (quoting *Hill*, 865 P.2d at 648). "The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Shulman*, 955 P.2d at 490; *accord, e.g.*, *Taus v. Loftus*, P.3d 1185, 1212 (Cal. 2007), *overruled on other grounds by Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1117 (Cal. 2011)

Plaintiff alleges that Defendants "engaged in a continuing and harassing course of conduct that intruded upon Pl[aintiff]'s private affairs without legitimate purpose." (FAC ¶ 92.) More specifically, Plaintiff alleges that Defendant LaVoice "repeatedly bypassed Pl[aintiff]'s counsel, contacted estranged relatives and peers for information about him, misled Pl[aintiff]'s family for

interviews, contacted Pl[aintiff] during his psychiatric hospitalization and forced treatments to secure information Pl[aintiff] did not voluntarily disclose to the public" and that she "made over 100 unwanted contacts with Plaintiff's counsel and investigator in a single month, engaged with her audience to debate Pl[aintiff]'s finances, who had in his life currently, amplifying harassment and creating substantial alarm and distress." (FAC ¶¶ 93–94.)

The undersigned finds that Plaintiff did not have an objectively reasonable expectation of seclusion or solitude in the data sources of "estranged relatives and peers" or Defendant LaVoice's "audience," nor does Plaintiff allege that Defendants "obtained" information from Plaintiff's counsel or investigator. And while there may be some form of contact during "psychiatric hospitalization and forced treatment" that rises to the level of penetrating an objectively reasonable expectation of physical or sensory privacy, the allegation of contact alone is insufficient under this standard. Therefore, the undersigned finds Plaintiff has not stated a claim as to intrusion upon seclusion and recommends dismissal of count seven.

7. <u>Recission</u> (Cal. Civ. Code § 39, 1689)

Plaintiff's eighth cause of action is for recission of any signed agreement between Plaintiff and Defendants based on incapacity. (FAC ¶¶ 97–100.) Under California Civil Code § 39, "[a] conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before the incapacity of the person has been judicially determined, is subject to rescission, as provided by [section 1689]."

Plaintiff alleges that at the time Defendants "obtained some form of written or verbal consent," (FAC ¶ 98), relating to an interview with Plaintiff, Plaintiff "had no less than 32 mental health proceedings, was under active psychiatric care, [and] was force-prescribed maximum-dose antipsychotic medications," (*id.* ¶ 97). Construing the TAC liberally, the undersigned finds that Plaintiff's allegations state a cognizable claim for rescission based on incapacity.

8. <u>Unfair Competition</u> (<u>UCL</u>) (Cal. Bus. & Prof. Code § 17200, et seq.)

Plaintiff's ninth cause of action is for a violation of the Unfair Competition Law ("UCL"). (FAC ¶¶ 101–05.) Under the UCL, unfair competition includes any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Therefore, there are three prongs under

14

which a claim may be established under section 17200. *Daro v. Superior Ct.*, Cal. Rptr. 3d 716, 724 (Cal. Ct. App. 2007), *as modified on denial of reh'g* (July 3, 2007) ("Because section 17200 is written in the disjunctive, a business act or practice need only meet one of the three criteria—unlawful, unfair or fraudulent—to be considered unfair competition"); *Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 731 (9th Cir. 2007) ("[e]ach prong...is a separate and distinct theory of liability"). Further, a claim under section 17200 may rest on a violation of another law. *Farmers Ins. Exch. v. Superior Ct.*, 826 P.2d 730, 734 (Cal. 1992). Under the UCL, an action may be unfair even if it is not unlawful. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 540 (Cal. 1999).

Here, Plaintiff alleges that Defendant LaVoice "commercially exploited Pl[aintiff]'s likeness and creative works without consent," (FAC ¶ 101), and that the "unauthorized use of Pl[aintiff]'s image, interviews, and private information constituted unlawful and unfair business practices because it generated economic benefit from Pl[aintiff]'s identity while depriving him of control over his intellectual property" (FAC ¶ 105). The undersigned finds this claim derivative of Plaintiff's claims for copyright infringement, as well as his incognizable claims of unauthorized use of likeness, unauthorized use of medical information, false light, and intrusion upon seclusion. *See Hawran v. Hixson*, Cal. Rptr. 3d 88, 106 (Cal. Ct. App. 2012). Therefore, the undersigned finds that this claim rises and falls on the viability of the underlying claims. *See id.* Because the undersigned has found that at least some of Plaintiff's other claims, liberally construed, state a claim, the undersigned finds that Plaintiff has stated a claim under the UCL.

9.  Civil Conspiracy (Cal. Common Law)

Plaintiff's final state law claim is count ten, civil conspiracy. (FAC ¶¶ 106–09.) As a preliminary matter, the undersigned notes that "[u]nder California law, there is no separate and distinct tort cause of action for civil conspiracy." *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997). However, conspiracy can in fact be a means of holding members of a conspiracy liable for torts committed as part of the conspiracy even when the defendant at issue did not directly commit the tort. *Barney v. Aetna Cas. & Sur. Co.*, 230 Cal. Rptr. 215, 225 (Cal. Ct. App. 1986) ("The pleading of civil conspiracy is merely a procedural method of

15

joining defendants . . . . The only significance of a civil conspiracy allegation is that it renders each participant responsible as a contributory tortfeasor whether or not he actually committed the wrongful act."). Decisions stating that conspiracy is not a separate cause of action stand only for the proposition that a conspiracy claim cannot be used to get around barriers to liability on the underlying tort, for example, immunity. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 514, 869 P.2d 454 (Cal. 1994) ("Conspiracy is not an independent tort; it cannot create a duty or abrogate an immunity. It allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law principles."). A conspiracy cause of action can stand when a wrongful underlying act is sufficiently alleged. *See NPK Indus. v. Hunter*, No. 15-cv-00811-SI, 2015 WL 5461667, at *5 (N.D. Cal. Sept. 16, 2015).

To plead a civil conspiracy claim, a plaintiff must allege "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 47 Cal. Rptr. 2d 752 (Cal. Ct. App. 1995). The plaintiff must also allege "specific facts about how each defendant conspired to commit the allegedly wrongful acts." *NPK*, 2015 WL 5461667, at *5. The undersigned construes this claim as one of conspiracy to defame based on Plaintiff's allegations as to the basis of Defendants' conspiracy—specifically that there was an "agree[ment] . . . to promote unsubstantiated accusations, including rape and child abuse," (FAC ¶ 106)—and Plaintiff's allegations of acts in furtherance of the conspiracy—specifically that Defendants "coordinated publication schedules, shared interview transcripts, and approved story angles to amplify defamatory statements about Pl[aintiff]," (*id.* ¶ 107). Construing the TAC liberally, the undersigned finds that Plaintiff's allegations state a cognizable claim for civil conspiracy to defame.

### III. CONCLUSION AND RECOMMENDATIONS

For the foregoing reasons, the undersigned RECOMMENDS that (1) Plaintiff be allowed to proceed on his federal law-based claims (counts one and eleven), (2) that the Court exercise supplemental jurisdiction over Plaintiff's state law claims, (3) that Plaintiff be allowed to proceed on state law-based counts three, four, six, eight, nine, and ten, and (4) that state law-based claims in counts two, five, and seven be dismissed for failure to state a claim.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **twenty-one (21) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **September 12, 2025**               /s/ *Sheila K. Oberto*
                                        UNITED STATES MAGISTRATE JUDGE