UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA

Jamie Osuna
CDC # BD0868
CSP-COR
PO Box 3476
Corcoran, CA 93212
Pl.,

against

Olivia LaVoice, et al,
Defs.

Docket No.: **1:24-cv-01122-KES-SKO**

OBJECTIONS TO MAGISTRATE JUDGE'S
FINDINGS AND RECOMMENDATION

**(Doc. 26)**

# I. INTRODUCTION

Plaintiff Jamie Osuna respectfully submits the following objections to the Magistrate Judge's Findings and Recommendations (Doc. 26), which recommended dismissal of Count Two (Unauthorized Use of Likeness), Count Five (Unauthorized Medical Information, Cal. Civ. Code § 56.36(a)), and Count Seven (Intrusion Upon Seclusion).

Because pro se pleadings must be liberally construed, and leave to amend should be granted unless amendment is clearly futile, dismissal of these claims at screening is premature. See *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

**Note**: The Findings and Recommendations referred to Peña as a "victim." Plaintiff clarifies that the FAC consistently used the phrase "alleged victim," which was not intended as a concession of factual or legal status but merely reflects how Defendants and third parties characterized her. Any reference to "victim" in the Findings misstates the pleadings.

## II. OBJECTION TO DISMISSAL OF COUNT TWO (UNAUTHORIZED USE OF LIKENESS)

The Findings and Recommendations dismiss Count Two, holding that Plaintiff failed to state a cognizable claim under Cal. Civ. Code § 3344(d) because Defendants' use of Plaintiff's likeness fell within the "news" exemption. (F&Rs at 9–10). Respectfully, this conclusion overlooks controlling authority and misapplies the record pled in the FAC and exhibits.

1                                  *PLAINTIFF'S OBJ. RE: DOC 26*

1. **Improper Citation:** The Findings relied on *McKinney v. Morris*, 2013 WL 5617125 (Cal. Ct. App. Oct. 15, 2013), an unpublished decision to dismiss the claim at screening. Under California Rules of Court, Rule 8.1115(a), unpublished opinions "must not be cited or relied on by a court or a party in any other action." Unpublished case law is not citable authority under Ninth Circuit Rule 36-3. The Court's reliance on *McKinney* to expand § 3344(d)'s exemption is therefore improper.

**2. Joker Branding and Sensationalism:** Defendant LaVoice sensationalized Plaintiff's identity by repeatedly branding him as the "real life Joker," attaching his likeness and life history to a notorious fictional villain for entertainment and marketing purposes. (FAC ¶ 38; Exs. Q–R.) In FAC ¶ 40, Plaintiff cited Defendant LaVoice's interview with Matthew Cox and linked it in n.1, noting its connection to content previously published by Danielle Kirsty. Plaintiff clarifies that while the FAC did not expressly state the interview's title, the program was in fact released under the name "Real-Life Joker." The citation and link in n.1 identify the publication, even though the title itself was not spelled out in the FAC. Defendant also used Plaintiff's baby photos, wedding photos, and childhood images to promote MWATF. Such sensationalism is not legitimate news reporting but exploitation of likeness for commercial gain.

**3. Native Advertising:** MWATF was marketed as "for more information" content styled as native advertising, not news. (FAC, ¶ 24.) (Ex. G-3, N-58-76.) Federal regulators have recognized that native advertising is deceptive commercial promotion, not protected editorial content. See *FTC Enforcement Policy Statement on Deceptively Formatted Advertisements*, 81 Fed. Reg. 22596 (Mar. 31, 2016).

**D. Fundraising:** MWATF was used for fundraising and solicitation, directly linking Plaintiff's likeness to commercial solicitations. (FAC, ¶ 17.) (Exs. H-1–H-3).

**E. Awards and Personal Branding:** Defendant LaVoice leveraged MWATF to advance her personal brand and professional opportunities, including promotional appearances at CrimeCon, awards events, and LinkedIn branding. (FAC, ¶ 26.) (Exs.

P–R). While these exhibits do not themselves display Plaintiff's likeness, they demonstrate that Defendant exploited MWATF--a production built on Plaintiff's likeness, photos, and identity--for her own commercial gain.

The Magistrate erred in dismissing Count Two by treating MWATF as exempt "news." Plaintiff has shown that Defendant's conduct was not legitimate reporting but exploitation: sensational "Joker" branding, use of non-public baby and wedding photos, native advertising styled as "for more information" content, fundraising solicitations and leveraging MWATF for Defendant's personal brand. Reliance on unpublished case law was also improper. These allegations fit squarely within cases limiting the news exemption where likeness is used for promotion or commercial gain. See *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1002–03 (9th Cir. 2001). Dismissal of Count Two was therefore improper.

### III. OBJECTION TO DISMISSAL OF COUNT FIVE (UNAUTHORIZED MEDICAL INFORMATION USE)

The Findings and Recommendations dismiss Count Five under the CMIA, holding that Defendants are not providers of health care within the meaning of Cal. Civ. Code § 56.36(a). (F&Rs at 9–10). Plaintiff does not dispute that Defendant LaVoice is a reporter rather than a medical provider. However, dismissal is still improper because the *same facts* support liability under California's constitutional right to privacy and federal substantive due process.

Plaintiff alleged in FAC ¶ 41 that Defendant LaVoice expressly acknowledged she could not lawfully obtain Plaintiff's medical records because they were protected by privacy laws, yet she nevertheless paraphrased information from Plaintiff's mother quoting his treating doctors, including disclosures of Plaintiff's brain damage. Defendant also admitted she was on the phone with an attorney "patiently trying to figure out how [she] could get [Plaintiff's] juvenile record unsealed." (*Id.*) These statements show Defendant knowingly attempted to bypass statutory medical and juvenile privacy protections in order to publicize Plaintiff's most sensitive health information.

Even if the CMIA does not apply to Defendant, California's Constitution (Art. I, § 1) provides an independent right to medical privacy against *anyone* who wrongfully obtains or

discloses such information. See *Hill v. NCAA*, 7 Cal. 4th 1, 35 (1994). Federal law likewise recognizes an individual's right to avoid disclosure of personal medical information. See *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977).

Courts have consistently held that pro se pleadings must be liberally construed, and that dismissal is improper where factual allegations support a cognizable claim even if the plaintiff mislabels the legal theory. See *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (complaint cannot be dismissed merely for "imperfect statement of the legal theory"); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (pro se complaints held to "less stringent standards"); *Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008) (dismissal improper where facts show a claim, even if statute is misidentified). This Court therefore has the authority to construe Count Five *sua sponte* as a constitutional privacy claim.

The Magistrate dismissed Count Five under the CMIA on the ground that Defendant is not a provider under the statute. Respectfully, Plaintiff alleged Defendant's deliberate attempts to obtain and publish confidential medical information, including statements about brain damage relayed through Plaintiff's family and LaVoice's admitted efforts to unseal juvenile medical records. (FAC ¶ 41). At a minimum, these facts state a claim under the California Constitution's explicit right to privacy, even if not within the CMIA's scope. Given the liberal construction required at screening, the Court should not dismiss Count Five but instead allow it to proceed under the proper privacy framework.

### IV. OBJECTION TO DISMISSAL OF COUNT SEVEN (INTRUSION UPON SECLUSION)

The Findings and Recommendations dismiss Count Seven, reasoning that Plaintiff lacked a reasonable expectation of seclusion in the sources identified ("estranged relatives and peers" or Defendant's "audience"), and that Plaintiff did not allege Defendants "obtained" information from Plaintiff's counsel or investigator. (F&Rs at 13–14). Respectfully, this overlooks key allegations and exhibits showing both (1) intrusion into non-public, confidential sources where Plaintiff did have an expectation of privacy, and (2) wrongful obtaining of information through improper means.

1. **Private Photos:** Defendant LaVoice admitted within MWATF to possessing and publishing sealed crime scene photographs from case no. 19CM-1882, expressly acknowledging that she was not supposed to have them. (FAC, ¶ 14.) By definition, sealed materials are non-public, and Plaintiff had a reasonable expectation of privacy in their contents. Similarly, LaVoice used non-public baby, wedding, and childhood photographs of Plaintiff without consent or any legitimate chain of permission, further intruding into Plaintiff's private life. Defendant also published Plaintiff's private jail correspondence ("jail mail"), which is akin to opening personal letters--a classic form of intrusion. (See publications listed as N-02, -03, -174, -179, -182, -190, -212; Ex. L-2.)

2. **Solicitation of Investigator and Interference in Legal Matters:** Plaintiff did allege obtaining of information from his own investigator, as Defendant incorporated the investigator's disclosures into MWATF, the entire production of which is already pled and challenged in the FAC. (E6, at 30:10–30:54.) The investigator admitted to Plaintiff that he was providing her information and even attempted to broker an arrangement to disclose further confidential information under the guise of assistance. Defendant further acknowledged that she attempted to insert herself into Plaintiff's legal case by facilitating a plea bargain. (FAC, ¶ 16.) Defendant had bypassed Plaintiff's counsel to obtain interview content and/or other information. (FAC, ¶¶ 10, 39.) These are not acts of mere dissemination, they are deliberate acts of obtaining and intruding into Plaintiff's confidential legal affairs.

The Magistrate erred in finding no reasonable expectation of privacy and no obtaining of confidential material. Plaintiff's allegations demonstrate that Defendant wrongfully obtained sealed crime scene photos, non-public family photos, and private jail correspondence, and solicited disclosures from Plaintiff's investigator while interfering in his legal representation and plea negotiations. These are textbook examples of intrusion into private affairs under *Taus v. Loftus*, 40 Cal. 4th 683, 725 (2007).

Because Plaintiff has alleged deliberate obtaining and use of non-public, confidential materials, dismissal at screening was improper, and Count Seven should be allowed to proceed.

## V. CONCLUSION

For the reasons set forth above, Plaintiff respectfully objects to the Findings and Recommendations recommending dismissal of Counts Two, Five, and Seven. The Magistrate's conclusions overlook key facts pled in the FAC and exhibits, rely on improper unpublished authority, and misapply controlling standards.

- **Count Two:** Plaintiff alleged and documented uses of his likeness outside § 3344(d)'s "news" exemption, including sensational "Joker" branding, non-public photos, native advertising, fundraising solicitations, and personal brand promotion.
- **Count Five:** Even if CMIA does not apply, Plaintiff alleged deliberate efforts to obtain and publish confidential medical and juvenile information, facts that state a claim under the California Constitution's right to privacy.
- **Count Seven:** Plaintiff alleged wrongful acquisition and use of private photos (e.g., sealed crime scene photographs, non-public family photos), private correspondence, investigator disclosures, and interference in legal representation--conduct recognized as intrusion under *Taus v. Loftus*, 40 Cal. 4th 683 (2007).

Because these Counts are legally and factually supported, dismissal at the screening stage would be improper. Plaintiff respectfully requests that the District Court reject the Findings and Recommendations in relevant part and allow Counts Two, Five, and Seven, to proceed.

For the Court's convenience, Plaintiff reattaches certain exhibits originally submitted with the Fourth Amended Complaint (Exs. G, H1–H3, I-3, L-2), which are directly relevant to the objections set forth herein. Plaintiff also submits new Exhibits P–R, which further illustrate Defendants' commercial use of MWATF for personal branding and promotion. Each exhibit is identified with a short explanatory note in the Exhibit.

Respectfully submitted September 13, 2025,

*[signature]*

p.p. Jamie Osuna

**EXHIBIT G**



**Exhibit G-1 — RTDNA correspondence re Murrow Awards entry (KGET17/MWATF)**
Correspondence from RTDNA confirming that KGET17 **submitted MWATF** for consideration for the **2020 Edward R. Murrow Awards**.
RTDNA entry fee schedule (reference): https://www.rtdna.org/edward-r-murrow-awards

**Exhibit G-2 — KGET17 promotion of RTDNA award**
Example social post by KGET17 promoting MWATF's Murrow Award recognition. *The post does not disclose that KGET17 submitted MWATF for consideration.*

EXHIBIT G



G-3

**Exhibit G-3— Promotional materials (KGET17/MWATF)**
Examples (n=39) of some of **KGET17** promotional placements for MWATF appearing within or adjacent to reporting about Pl./19CM-1882. Captures show substantially similar wording and embedded links directing to MWATF content. Sourced from KGET17's website and its/staff's official social media accounts.

**EXHIBIT H**



**Exhibit H-1 — Instagram Story (LaVoice) promoting fundraiser**
Instagram Story by LaVoice referencing MWATF and linking to a GoFundMe for Baltierra.
**Exhibit H-2 — Instagram removal notice for LaVoice's Story**
Instagram screen reflecting removal of the Story for Community Guidelines (notice referencing "It looks like you promoted misleading or products or services that may scam people out of money.") The Story image shows LaVoice's native "WOW" overlay.
**Exhibit H-3 — KGET17 social post about the fundraiser**
KGET17 post promoting the Baltierra fundraiser.
**Exhibit H-4 — Baltierra social post for fundraiser**
2024 Facebook post by Baltierra promoting the fundraiser. As shown, the post does not state Peña's year of death or reference the "party" language or GoFundMe.
**Exhibit H-5 — GoFundMe page text**
GoFundMe page for Peña including the statement: "With strangers even reaching out to [Pl.], offering him financial support."

**EXHIBIT I**

**I-1**
Olivia LaVoice · Creator
And I didn't need his permission or story rights. And I don't think he can legally profit off of his crimes, which I would think means he can't sell

**I-2**
Olivia LaVoice · Creator
Investigators looked into the info, but I truly think more could be done. The law enforcement agencies involved are overloaded and understaffed

**I-3**
Olivia LaVoice · Creator
Yes I will definitely make content about this down the road. My podcast "the man with a thousand faces" has a lot of info

**I-4**
Olivia LaVoice · Creator
I am very curious as to who in his life has the $$$ for this. I don't believe it's anyone who was in his life prior to him going to prison.
2022-11... Reply
Olivia LaVoice · Creator
My gut tells me it's someone he's "met" in recent years. Unless the attorney is doing the case pro bono, but strange if so that he won't confirm it

**I-5**
Olivia LaVoice · Creator
Hey Conrad! For some who have closely followed Osuna and this case, someone likely paying hundreds of thousands of dollars for his defense
2022-11... Reply
Olivia LaVoice · Creator
Several years into the case, is an interesting development. Some may think it is not interesting. Thank you for watching

**I-6**
Olivia LaVoice · Creator
His family is not wealthy and no one has ever helped him pay for a private attorney before during his many many cases, including prior murder case.
2022-11... Reply
Olivia LaVoice · Creator
And for the current murder case, he's had a court appointed attorney for several years. So the change, in my opinion, seems sudden/ a bit random.

**I-7**
Olivia LaVoice · Creator
So I am of course more invested than most
2022-11...
Olivia LaVoice · Creator
Yes you are correct! It is not public information. I still think it's an interesting topic though. But I've covered Osuna for many years

URL: https://www.tiktok.com/@olivialavoice/video/7167005859791392046

**I-8**
Bella Conte
He thought he was your Joker and you were Harley Quinn!
2022-11... Reply
Olivia LaVoice · Creator
Something like that 🙆

URL: https://www.tiktok.com/@olivialavoice/video/7166267509006421290

**I-9**
Author
Olivia LaVoice ✓
Sonia N Juan Garcia I had a long talk with Danielle the other day catching up and she told me about court. I'm keeping you all in my thoughts and sending you all so much love and strength ❤️

URL: https://www.facebook.com/olivialavoiceQ13/posts/pfbid0t5rJBFqpyw1xsBYBXAnGj8w6psGyohgWdimyaUmfy4iMrzNVmj9jGUqzoqRHGNt7l?comment_id=3630074073986241&reply_comment_id=191197854072994

**I-10**
Danielle Baltierra
Thank you Olivia LaVoice Q13 for giving us a voice to tell who my sister Yvette was, no one else ever gave us that opportunity. Speaking with you and letting it all out for the first time helped me start my healing process. It was the first time I shared this much with anyone because I had to always be strong and hold it all together for my family. YOU gave me the ability to start caring for myself and to finally start to process the trauma I went through with her murder and all craziness that happened over 6 years of going to court. I will forever be thankful to you, thank you for your friendship through this as well as the continued friendship, it means the world to me that after all this time you still call and text me regularly to check on me and the family.

URL: https://www.facebook.com/olivialavoiceQ13/posts/pfbid02oWLeEiCEnscnFeYuaP1ZsAuEu8kYk4bapiCNd4c7dNncJ4cuUGEUjVMhCMBAsk2Ml?comment_id=321207186042027

Exhibit pg. 13

L-1

JAIME OSUNA BD0868 SAC A 001 1|019001L ID:1391259981 [P 1/1]

**You have received a JPay letter, the fastest way to get mail**

From: Olivia LaVoice CustomerID 28788248
To: JAIME OSUNA, ID: BD0868
Date: 1/19/2022 8:27:38 PM EST   Letter ID: 1391259981
Location: SAC
Housing: A 001 1|019001L

Hey Jamie,

I finally figured out how to use jpay. It's crazy to me this exists. For all the times I've written letters that took weeks to get to a prison and then weeks to get a response back. Email is certainly easier. Anyhow I wanted to reach out and let you know that I'm still invested in knowing if you committed other crimes that are unsolved. I know this is something we've gone back and forth on and you've made it fairly clear this is information you won't be sharing. I also have started to come to the conclusion that the cops I've talked to are likely right, the only two murders you've committed are the ones you're locked up for. As you may know I have a thorough timeline for when it would've even been possible for you to have committed other murders and the timeframes are short. I don't want to waste either of our time. I guess this is just my way of saying if you ever decide you do want to talk about other cases, feel free to drop me a line.

Sincerely,
Olivia

L-2






URLs: https://www.tiktok.com/@olivialavoice/video/7167817016164748587
https://www.instagram.com/p/CkwC42Qj45J/
https://www.tiktok.com/@olivialavoice/video/7166267509006421290
https://www.tiktok.com/@olivialavoice/video/7167817016164748587

---

**Exhibit L-1 — JPay message (LaVoice to Pl.)**
JPay message from LaVoice to Pl. dated 01/19/2022, stating: "the cops I talked to were likely right" regarding Pl. not committing the unsolved murders and inviting Pl. to contact her. *(This date post-dates LaVoice's public statement of date/timeframe that she had "cut contact.")*

**Exhibit L-2 — LaVoice posts re: letters and prior outreach**
Posts by **LaVoice** presenting Pl.'s letters as unexpected/unwanted, despite MWATF and Sword and Scale materials reflecting that she had previously reached out/was seeking comunication and the above-referenced JPay in Ex. L-1 [which JPay Pl. did not respond to.]

**EXHIBIT P**



**Exhibit P (LinkedIn)**: Screenshot of Defendant LaVoice's LinkedIn profile highlighting MWATF to market her personal brand and professional qualifications and not as "news." While Plaintiff's likeness is not directly visible here, the exhibit demonstrates continued commercial exploitation of MWATF, and by extension Plaintiff's likeness and identity, in personal marketing and career advancement. URL: https://www.linkedin.com/in/olivia-lavoice-128705a8

**EXHIBIT R**



**Exhibit R (Clue Awards):** Screenshot showing Defendant LaVoice promoting MWATF in connection with an awards event, further using the program to enhance her professional stature. Although Plaintiff's likeness is not explicitly shown in this exhibit, MWATF's content is built upon Plaintiff's identity, making the exhibit relevant to Defendants' commercial exploitation beyond news reporting. URL: https://www.clueawards.com/judges/Olivia%20Lavoice