Robert S. Gutierrez (Bar No. 143223)
gutierrezr@ballardspahr.com
Elizabeth Schilken (Bar No. 241231)
schilkene@ballardspahr.com
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Tel: 424.204.4400
Fax: 424.204.4350

Attorneys for Defendant
NEXSTAR MEDIA INC.
(erroneously sued as Nexstar Media Group, Inc. and KGET17 News)

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Jamie Osuna<br>CDC # BD0868<br>CSP-COR<br>PO Box 3476<br>Corcoran, CA 93212,<br><br>Plaintiff,<br><br>v.<br><br>Olivia LaVoice<br>KGET17 News,<br>Nexstar, et al,<br><br>Defendants. | CASE NO. 1:24-cv-01122-KES-EGC<br><br>The Hon. Kirk E. Sherriff<br><br>**NOTICE OF MOTION AND MOTION BY DEFENDANT NEXSTAR MEDIA INC. TO DISMISS FOURTH AMENDED COMPLAINT**<br><br>[Declaration of Robert S. Gutierrez; Request for Judicial Notice; and [Proposed] Order filed concurrently herewith.] |

**TO THE HONORABLE COURT AND TO PLAINTIFF IN PRO PER:**

**PLEASE TAKE NOTICE** that Defendant Nexstar Media Inc. (“Defendant”), erroneously sued as Nexstar Media Group, Inc. and KGET17 News, will and hereby does move this Court for an order dismissing the First, Third, Fourth, Sixth, Ninth and Tenth Causes of Action in the Fourth Amended Complaint of Plaintiff Jamie Osuna (“Plaintiff”), without leave to amend, for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and to dismiss the Eighth Cause of Action, without leave to amend, for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Defendant brings this motion on the following grounds:

(1) The First Cause of Action for copyright infringement fails to state a claim upon which relief can be granted, because: (i) with respect to the 2017 jailhouse interview recording and Plaintiff's interview responses which Plaintiff claims are infringed by *The Man With a Thousand Faces* podcast ("Podcast"), Plaintiff does not own either the recording or the interview responses; (ii) with respect to Plaintiff's letters and photograph which Plaintiff claims are infringed by the Podcast, those uses are fair; and (iii) with respect to Plaintiff's claim that his artwork was infringed, the Fourth Amended Complaint ("FAC") fails to identify any infringed artwork.

(2) The Third Cause of Action for libel and libel per se fails to state a claim upon which relief can be granted, because: (i) Plaintiff is libel proof, and (ii) the FAC does not plausibly allege actual malice.

(3) The Fourth Cause of Action for violation of Plaintiff's privacy rights under the California Constitution fails to state a claim upon which relief can be granted, because the facts published in the Podcast are newsworthy.

(4) The Sixth Cause of Action for false light invasion of privacy fails to state a claim upon which relief can be granted, because it is duplicative of, and fails for the same reasons as, the libel claim.

(5) Plaintiff lacks Article III standing to bring the Eighth Cause of Action for rescission.

(6) The Ninth Cause of Action for violation of Bus. & Prof. Code § 17200, *et seq.*, fails to state a claim upon which relief can be granted, because: (i) to the extent it is derivative of the libel claim, it fails for the same reasons; (ii) to the extent it alleges use of Plaintiff's name, likeness or persona without authorization or compensation, no authorization or compensation was required because the Podcast is a news or public affairs account; and (iii) Plaintiff lacks statutory standing under Bus. & Prof. Code § 17204.

(7) The Tenth Cause of Action for civil conspiracy fails to state a claim upon which relief can be granted, because civil conspiracy is not a standalone cause of action but simply

a means of imposing liability for an underlying tort, and the FAC fails to plausibly allege any tort claims.

The Motion is based on this Notice; the accompanying Memorandum of Points and Authorities, the supporting declaration of Robert S. Gutierrez and attached exhibits; the Request for Judicial Notice; any oppositions or replies filed by the parties; the pleadings, records, and case file in this action, the arguments of counsel at the time of any hearing on the Motion; all matters of which this Court may take judicial notice; and such other and further matters as the Court deems just and proper.

Pursuant to Section I.C. of the Court's Standing Order, the parties did not engage in a pre-filing meet and confer. Defendant submits this Motion for decision without oral argument pursuant to Local Rule 230(l) and Section I.A. of the Standing Order. Pursuant to Local Rule 230(l), Plaintiff must file any opposition within twenty-one (21) days from the date of service of this Motion.

DATED: September 9, 2026

**BALLARD SPAHR LLP**

By: */s/ Robert S. Gutierrez*
Robert S. Gutierrez
Attorneys for Defendant
NEXSTAR MEDIA INC.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

## TABLE OF CONTENTS

Page


I. FACTUAL AND PROCEDURAL BACKGROUND ..... 1

1. Plaintiff's crimes ..... 1

2. The Podcast ..... 1

II. ARGUMENT ..... 5

A. Legal Standard on Motion to Dismiss ..... 5

B. The Copyright Infringement Claim Fails as a Matter of Law ..... 5

1. The claim fails to the extent it is based on the 2017 jailhouse interview ..... 6

(a) Purpose and character of the use ..... 8

(b) Nature of the copyrighted work ..... 9

(c) Amount and substantiality of the portion of the work used ..... 10

(d) Effect of the use on the market for the original ..... 11

2. The claim fails to the extent it is based on Plaintiff's photograph. ..... 12

(a) Purpose and character of the use ..... 12

(b) Nature of the copyrighted work ..... 14

(c) Amount and substantiality of the portion used ..... 14

(d) Effect of the use on market for the original ..... 15

3. The allegations regarding infringement of unspecified "artwork" fail to plausibly allege a claim. ..... 16

C. THE LIBEL/LIBEL PER SE CLAIM FAILS AS A MATTER OF LAW. ..... 16

1. Plaintiff is libel proof. ..... 16

2. The FAC fails to plausibly allege actual malice. ..... 17

D. THE INVASION OF PRIVACY CLAIM FAILS AS A MATTER OF LAW. ..... 19

E. THE FALSE LIGHT CLAIM FAILS AS A MATTER OF LAW. ..... 20

F. THE UNFAIR COMPETITION CLAIM FAILS AS A MATTER OF LAW. ..... 20

G. THE CONSPIRACY CLAIM FAILS AS A MATTER OF LAW ....................... 21

III. PLAINTIFF LACKS ARTICLE III STANDING FOR THE RESCISSION CLAIM. ....................... 22

IV. CONCLUSION ....................... 23


Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
598 U.S. 508 (2023) ........ 8, 12, 13

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (1994) ........ 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 5

*Bell Atl. v. Twombly*,
550 U.S. 544 (2007) ........ 5

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
448 F.3d 605 (2d Cir. 2006) ........ 11, 13, 14, 15

*Boesen v. United Sports Publs., Ltd.*,
2020 U.S. Dist. LEXIS 203682 (E.D.N.Y. Nov. 2, 2020) ........ 15

*Bouchat v. Balt. Ravens Ltd. P'ship*,
619 F.3d 301 (4th Cir. 2010) ........ 14

*Campbell v. Acuff-Rose Music*,
510 U.S. 569 (1994) ........ 10, 11, 14

*Cardillo v. Doubleday & Co.*,
518 F.2d 638 (2d Cir. 1975) ........ 16

*Cariou v. Prince*,
714 F.3d 694 (2d Cir. 2013) ........ 10

*Chestang v. Yahoo Inc.*,
2011 U.S. Dist. LEXIS 110908 (E.D. Cal. Sept. 28, 2011) ........ 6

*Clark v. Transp. Alternatives, Inc.*,
2019 U.S. Dist. LEXIS 46274 (S.D.N.Y. Mar. 18, 2019) ........ 14

*Cmty. for Creative Non-Violence v. Reid*,
490 U.S. 730 (1989) ........ 6, 7

*Davis v. Tennessean*,
83 S.W.3d 125 (Tenn. Ct. App. 2001) ........ 16

*Denney v. Lawrence*,
22 Cal. App. 4th 927 (1994) ........ 17

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

*Feist Publ'ns v. Rural Tel. Serv.*,
499 U.S. 340 (1991) .......... 5, 6

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) (en banc) .......... 7

*Hachette Book Grp. v. Internet Archive*,
115 F.4th 163 (2d Cir. 2024) .......... 8

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
471 U.S. 539 (1985) .......... 9

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .......... 19

*Idema v. Dreamworks, Inc.*,
162 F. Supp. 2d 1129 (C.D. Cal. 2001) .......... 21

*in Planet Aid, Inc. v. Reveal*,
44 F.4th 918 (9th Cir. 2022) .......... 18

*Jackson v. Longcope*,
394 Mass. 577 (Mass. 1985) .......... 17

*Jackson v. Mayweather*,
10 Cal. App. 5th 1240 (2017) .......... 20

*Korman v. Free Beacon LLC*,
826 F. Supp. 3d 720 (E.D. Va. 2026) .......... 9, 12, 13, 14

*Lamb v. Rizzo*,
242 F. Supp. 2d 1032 (D. Kan. 2003) .......... 17

*Larson v. Dorland*,
693 F. Supp. 3d 59 (D. Mass. 2023) .......... 9

*Leadsinger, Inc. v. BMG Music Pub.*,
512 F.3d 522 (9th Cir. 2008) .......... 8

*Marano v. Metro. Museum of Art*,
472 F. Supp. 3d 76 (S.D.N.Y. 2020) .......... 9

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) .......... 22

*McGillvary v. Netflix, Inc.*,
No. 2:23-cv-01195-JLS-SK, 2024 U.S. Dist. LEXIS 135068, 2024 WL 3588043 (C.D. Cal. Jul. 30, 2024), *aff'd*, 2026 U.S. App. LEXIS 3633 (9th Cir. 2026) .......... 7

*Med. Marijuana, Inc. v. ProjectCBD.com*, 46 Cal. App. 5th 869 (2020)........................................................................................ 21

*Mintz v. Subaru of Am., Inc.*, 716 Fed. Appx. 618 (9th Cir. 2017)........................................................................................ 6

*Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125 (2009)........................................................................................ 19

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)........................................................................................ 18

*Norse v. Henry Holt & Co.*, 847 F. Supp. 142 (N.D. Cal. 1994)........................................................................................ 8, 9

*Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n.*, 457 F.3d 941 (9th Cir. 2006)........................................................................................ 22

*Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18 (1st Cir. 2000)........................................................................................ 12, 14

*Paul Rudolph Found. v. Paul Rudolph Heritage Found.*, 2022 U.S. Dist. LEXIS 162451 (S.D.N.Y. Sept. 8, 2022)........................................................................................ 6

*Philpot v. Media Research Ctr. Inc.*, 279 F. Supp. 3d 708 (E.D. Va. 2018)........................................................................................ 11

*Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143 (S.D.N.Y. 2024)........................................................................................ 16

*Ray v. Time, Inc.*, 452 F. Supp. 618 (W.D. Tenn. 1976)........................................................................................ 16

*Rosanova v. Playboy Enters.*, 411 F. Supp. 440 (S.D. Ga. 1976), *aff'd*, 580 F.2d 859 (5th Cir. 1978)........................................................................................ 17

*Savage v. Council on American-Islamic Relations, Inc.*, 2008 U.S. Dist. LEXIS 60545 (N.D. Cal. Jul. 25, 2008)........................................................................................ 10

*Shulman v. Group W Productions, Inc.*, 18 Cal. 4th 200 (1998)........................................................................................ 19, 20

*Stebbins v. Google LLC*, 2023 U.S. Dist. LEXIS 169937 (N.D. Cal. Aug. 30, 2023)........................................................................................ 8

*Swatch Group Mgmt. Servs. v. Bloomberg L.P.*, 756 F.3d 73 (2d Cir. 2014)........................................................................................ 10

*Tallman v. Spencer*, 2025 U.S. Dist. LEXIS 84133 (D. Or. Apr. 14, 2025)........................................................................................ 18

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

*Ted Ent., Inc. v. Saber*,
2026 U.S. Dist. LEXIS 167398 (C.D. Cal. June 29, 2026)........ 11, 15

*Trump v. Simon & Schuster, Inc.*,
791 F. Supp. 3d 470 (S.D.N.Y. 2025)........ 6

*Walker v. USAA Cas. Ins. Co.*,
474 F. Supp. 2d 1168 (E.D. Cal. 2007)........ 21

*Wasser v. San Diego Union*,
191 Cal. App. 3d 1455 (1987)........ 19

*Whiddon v. Buzzfeed, Inc.*,
638 F. Supp. 3d 342 (S.D.N.Y. 2022)........ 14

*Whyte Monkee Prods., LLC v. Netflix, Inc.*,
174 F.4th 761 (10th Cir. 2026)........ 12, 13

*Wynberg v. National Enquirer*,
564 F. Supp. 924 (C.D. Cal. 1982)........ 16

*Wynn v. Chanos*,
75 F. Supp. 3d 1228 (N.D. Cal. 2014)........ 18

**Statutes**

17 U.S.C. § 101........ 7

17 U.S.C. § 102(a)........ 6

17 U.S.C. § 107........ 6, 8, 10

17 U.S.C. § 107(3)........ 10

17 U.S.C. § 107(4)........ 11

17 U.S.C. § 410........ 7

28 U.S.C. § 1915(e)(2)........ 5

Article III of the Constitution........ 22

Bus. & Prof. Code § 17200........ 20, 21

Bus. & Prof. Code § 17200, *et seq.*........ 4

Cal. Bus. & Prof. Code § 17204........ 21

Civ. Code § 56.36(a)........ 4

Civ. Code § 3344........ 4, 21

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

FCPA ........................................................................................................... 18

UCL ........................................................................................................... 21

**Other Authorities**

California Constitution Article I, § 1 ........................................................................... 4

F.R.C.P. 12(b)(1) ........................................................................................................... 5, 22

F.R.C.P. 12(b)(6) ........................................................................................................... 5

Restatement of Torts 2d § 652D cmt. h ........................................................................... 19

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**MEMORANDUM OF POINTS AND AUTHORIES**

## I. FACTUAL AND PROCEDURAL BACKGROUND

### 1. Plaintiff's crimes

In November 2011, Plaintiff Jamie Osuna ("Plaintiff") tortured, murdered and mutilated Yvette Pena at the El Morocco Motel in Bakersfield. In 2017, on the eve of the murder trial, then-KGET-TV 17 reporter Olivia LaVoice conducted a recorded jailhouse interview of Plaintiff. Days later, Plaintiff pleaded guilty to torturing and murdering Pena and was sentenced to life in prison without parole. In March 2019, while serving his sentence at Corcoran State Prison, Plaintiff committed another murder, torturing, mutilating and *beheading* his cellmate Luis Romero, according to authorities. He is alleged to have also severed Romero's thumb, removed one of his eyes, parts of his ribs, and one of his lungs, and to have made a necklace out of Romero's body parts, writing "ha ha ha" and other messages on the cell walls in blood. (Ep. 6, 6:01-6:35). He is awaiting trial in Kings County on felony murder charges.

### 2. The Podcast

In October 2019, Defendant, the owner and operator of news station KGET-TV 17, released a serial podcast about the murders of Pena and Romero, using excerpts of the 2017 jailhouse interview and other source material from LaVoice's years of reporting on Plaintiff. The podcast was titled *The Man With a Thousand Faces* (the "Podcast"), which is a reference to the words "I am a man with a thousand faces" Plaintiff allegedly wrote in blood on his cell wall after murdering Romero. The webpage for each Podcast episode, available on YouTube, features a collage of childhood and adult photographs of Plaintiff in the background, in heavy grayscale; and a single color photograph superimposed on the collage in the foreground. The six Podcast episodes vary in length from 27 to 45 minutes. The episodes most relevant to Plaintiff's lawsuit are Episodes 2, 3 and 5, described below.

### Episode 2: *She Kinda Looks Like Your Wife*

The episode titled *She Kinda Looks Like Your Wife* focuses on Plaintiff's turbulent relationship with his now ex-wife, referred to in the Podcast as "Jane," who first tipped off police that Plaintiff may have murdered someone at the El Morocco Motel. Jane and Plaintiff met at a

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

party at Jane's house where Plaintiff got into an altercation with and stabbed another partygoer. He went to jail for assault with a deadly weapon and then began courting her from behind bars, sending her letters. After he was released from jail, she spent the night with him in a motel and became pregnant. They were married before the baby was born. His behavior later turned controlling, and emotionally and physically abusive. After Plaintiff served more prison time, their relationship ended. He was arrested for Pena's murder in 2011, and Jane says he sent her hate mail from his cell: "'letters, like pentagrams, talking about my evil diseased dead mother, I'm a sister of the devil. Just very devil, all devil-worshipping [inaudible], horrible letters. He sent them in blood. He sent me a dead smashed rat." (25:44-26:00).

At the end of Episode 2, La Voice narrates that Jane worries how she will ever be able to explain Plaintiff's life to their son. LaVoice notes that before he was arrested for murder, Plaintiff wrote a message in the child's baby book, which LaVoice's colleague reads aloud:

> "To my son from your dad Jamie. Well son, I want you to know that I love you and I'm proud to be your father. You are my firstborn child and I love you to death. Me and your mom are going through rough times right now due to my mistakes and I'm sorry. I'm going to bounce back from my mistakes for you and your mom. Your mom is a strong person and she's hanging in there. We're trying our best. I hope to still be enough of a father when you're old and read this. Well I wish you a positive, successful life and don't make the same mistakes I have in my life. And know mommy and daddy love you."

(31:02-31:39).

**<u>Episode 3: *The Devil Doesn't Get Hurt*</u>**

The episode titled *The Devil Doesn't Get Hurt* focuses on Plaintiff's abusive childhood. On the webpage for the episode, a color portrait of Plaintiff as a child ("Episode 3 Photo") appears superimposed on the collage of grayscreen images. The Episode 3 Photo depicts Plaintiff as a boy sitting in front of a canvas splattered with multi-color paints. On the floor is a tipped-over bucket of red paint. LaVoice leads off the episode by recalling how she once opened a folder of photos on her phone and happened to see this childhood photo next to a gruesome crime scene image from Plaintiff's cell in Corcoran. In the Episode 3 Photo, LaVoice narrates:

> He's probably six years old … He's got his hair combed to one side and a big toothy grin. Next to him is a big bucket of red paint spilled onto the floor. Looking at that photo, next to the crime scene photo with blood covering every inch of the floor of

> a prison cell, is a juxtaposition forever etched into my brain. But not every photo of young Jamie seems that morbid. In most of them he looks like a regular happy innocent little boy. (2:36-3:15).

Episode 3 goes on to examine how an innocent looking child became the monstrous adult who committed two grisly murders and claimed to have committed two more. LaVoice recounts the severe abuse Plaintiff suffered as a child at the hands of his stepfather, interviewing Plaintiff's mother and other relatives (*e.g.*, 6:04, 17:08, 23:25, 34:01), Plaintiff (*e.g.*, 25:54), and a forensic psychologist (*e.g.*, 4:44). LaVoice asks whether Plaintiff could have turned out differently if he had had a different childhood. (*See*, *e.g.*, 27:49-28:56; 5:31-38) ("How do you determine if they were born that way or if they were made into that person?").

**Episode 5: *Why So Serious?***

The episode *Why So Serious?* focuses on Plaintiff's statements in his 2017 jailhouse interview about murdering Pena, and other people he claimed to have killed. LaVoice says he "confessed to me that he was guilty of the murder [of Pena], and he told me a lot more." (3:44-3:50). Among Plaintiff's recorded quotes in this episode:

> "[T]o this day they ask me if I can go back in time and change anything, will I? No, I will not, even in this case, in this murder case. If I can go back and change it I will do it again and over again, and if I'm released I'll probably end up back here with the same thing." (2:59-3:21).
>
> "[A]s far as murder goes, and why … as you kill a person it's … trying to get a rush, it's a rush, it's an addiction, it's a drug." (5:39-6:11).
>
> "There was no other circumstances as far as like burglary or any type of situation that went wrong [before murdering Pena], it was more of a, oh, this is a opportunity[.]" (9:33-9:45).
>
> "As you torture and stay with the body even afterwards, the smell, the decomposing … and all that … you go through all that stuff, it stays with you forever. For me, it is not a nightmare. For me it is, how can I say, like a prize, like a trophy. It's a picture. It's a memory. It's a photograph that I can go back and look and get pleasure from it." (7:28-8:00).
>
> "I left all my fingerprints and DNA and all that [at the El Morocco Motel]. I've done this many times before. I'd known crimes before, and I know how to clean shit up." (9:00-9:10).

Plaintiff also told LaVoice that he had murdered two other people:

> L: Have you killed anyone else?
>
> O: Yes.
>
> L: How many others?
>
> O: Two.



Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

L: Who are they?
O: Can't tell you, but you will find out.

(9:59-10:07). Plaintiff went on to give LaVoice the dates of these claimed murders, and the ages and sex of the claimed victims. (11:33-12:04, 13:03-13:07).

By the time LaVoice conducted the jailhouse interview in 2017, Plaintiff had several tattoos around his eyes and mouth, resembling the Joker from the *Batman* comics. Episode 5 examines Plaintiff's obsession with the Joker, and LaVoice reports that he "sent the District Attorney Lisa Green letters from jail that included printed photos of her face with a Joker smile and Joker eyes drawn in red ink, as well as her neck slit with the red ink dripping down the photo of her. Underneath her photo, Osuna wrote: 'Smile now, die later,' 'Why so serious?,' and 'Smile more, maggot.'" (26:03-26:30). LaVoice notes that "Why so serious?" was the Joker's line in the 2008 Batman movie *The Dark Knight.*

LaVoice also reports that Plaintiff sent the D.A. letters claiming to have killed four victims in addition to Pena: "Going back to the letters Osuna sent the District Attorney in 2013: He mailed a letter with a cutout of four women from an ad in a magazine. In his usual fashion, he drew Joker smiles and stab wounds on the women. He also writes, 'first or last names to the victims I have killed' … The names Richard, Betty, Carlos and Donald are written next to the cutout of the female models. Underneath the cutout he writes, 'they're in Arvin and Lamont,' question mark." (41:09-41:43).

**3. <u>Plaintiff's Lawsuit</u>**

On September 20, 2024, five years after the Podcast was released, Plaintiff filed this action. The operative Fourth Amended Complaint ("FAC") asserts claims against Defendant for (1) copyright infringement; (2) unauthorized use of likeness under Civ. Code § 3344; (3) libel and libel per se; (4) violation of privacy under California Constitution Article I, § 1; (5) unauthorized use of medical information under Civ. Code § 56.36(a); (6) false light invasion of privacy; (7) intrusion upon seclusion; (8) rescission; (9) unfair competition under Bus. & Prof. Code § 17200, *et seq.*; and (10) common law civil conspiracy. The second, fifth and seventh counts for violation of Civ. Code § 3344, unauthorized use of medical information under Civ. Code

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

§ 56.36(a), and intrusion upon seclusion were dismissed by the Court pursuant to 28 U.S.C. § 1915(e)(2).

The copyright infringement count in the FAC alleges that "[Plaintiff] owns valid, registered copyrights in TXu002472056, PAu004259370, VAu001547474, and TXu002471802 (letters, artwork, 2017 interview, photo)." FAC ¶ 52. Plaintiff alleges these works were infringed when "LaVoice [and] KGET17 published [Plaintiff's] copyrighted private letters, artwork, photograph, his spoken words from a jail interview conducted in 2017 in MWATF [*Man With a Thousand Faces*], and other publications." FAC ¶ 9.

## II. <u>ARGUMENT</u>

### A. <u>LEGAL STANDARD ON MOTION TO DISMISS</u>

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the plaintiff alleges enough facts to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Similarly, a complaint that merely offers "naked assertion[s]" without "further factual enhancement" is subject to dismissal. *Twombly*, 550 U.S. at 557. When ruling on a Rule 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true, but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* At 555. Also, under F.R.C.P. 12(b)(1), a party may move to dismiss on the ground that the court lacks subject matter jurisdiction over one or more of the plaintiff's claims.

### B. <u>THE COPYRIGHT INFRINGEMENT CLAIM FAILS AS A MATTER OF LAW.</u>

To plead a claim for copyright infringement, a plaintiff must allege (1) ownership of a valid copyright, and (2) copying of original, protectable elements of the plaintiff's work. *Feist Publ'ns v. Rural Tel. Serv.*, 499 U.S. 340, 361 (1991). With respect to the second element of copying, a

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

plaintiff must "plausibly allege that [the defendant] had access to [his] copyrighted work and that the works at issue are substantially similar in their protected elements." *Mintz v. Subaru of Am., Inc.*, 716 Fed. Appx. 618, 621 (9th Cir. 2017). Even where a plaintiff can establish these elements, a claim for infringement fails where the use is fair. 17 U.S.C. § 107.

The FAC pleads that Defendant committed copyright infringement by publishing, in the Podcast and "other publications,"[1] Plaintiff's (1) "copyrighted private letters," (2) "artwork," (3) "photograph," and (4) "spoken words from a jail interview conducted in 2017." FAC ¶¶ 9, 52 (alleging infringement of registrations TXU002472056, PAU004259370, VAU001547474, and TXU002471802 ("letters, artwork, 2017 interview, photo")). Each work is addressed below.

**1. <u>The claim fails to the extent it is based on the 2017 jailhouse interview.</u>**

Plaintiff does not own the copyright in the 2017 jailhouse interview. His claim for infringement of the interview therefore fails as a matter of law. *Feist Publ'ns*, 499 U.S. at 361.

First, Plaintiff does not own the "spoken words" from the interview. FAC ¶ 9. Interview responses are not protected by copyright apart from their fixation in a medium of tangible expression. 17 U.S.C. § 102(a) ("Copyright protection subsists … in original works of authorship fixed in any tangible medium of expression[.]"); *Trump v. Simon & Schuster, Inc.*, 791 F. Supp. 3d 470, 498 (S.D.N.Y. 2025) ("there is almost no support in the case law for the notion that an interviewee has a copyright interest in his responses to interview questions").

Second, Plaintiff does not own the copyright in the audiovisual recording of the interview. Copyright ownership in a work "vests initially in the author" of the work. *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). The author is the person "who actually creates the

[1] As to "other publications," the FAC cites to "Exhibit N." *Id.* Exhibit N lists 50 alleged infringements, on social media posts and in news articles on KGET's website, of unspecified "copyrighted material." Leaving Defendant and the Court to guess which works were infringed in 50 different articles and social media post does not plausibly allege an infringement claim. *Paul Rudolph Found. v. Paul Rudolph Heritage Found.*, 2022 U.S. Dist. LEXIS 162451, *19 (S.D.N.Y. Sept. 8, 2022) ("By failing to specify the works that were infringed, or where, when, and how the infringement occurred, Defendants have failed to plead any instance of copyright infringement[.]"); *Chestang v. Yahoo Inc.*, 2011 U.S. Dist. LEXIS 110908, *7-8 (E.D. Cal. Sept. 28, 2011) (dismissing copyright infringement complaint of pro se prisoner plaintiff who failed to specifically identify the infringed work and alleged acts of infringement). The infringement claim should therefore be limited to the referenced registered works in the Podcast.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

work," meaning the one who "translates an idea into a fixed, tangible expression." *Id.* Thus, to be considered an author, a plaintiff must have "fixed" the work, or it must have been fixed under his authority. *See* 17 U.S.C. § 101. The allegations in the FAC establish that the interview was not fixed on videotape by Plaintiff, or under his authority. To the contrary, the FAC pleads the interview was recorded *by KGET17* without his valid consent. *See* FAC ¶ 97; ¶ 114. Plaintiff is therefore not the author of the A-V recording, including his spoken statements. *McGillvary v. Netflix, Inc.*, No. 2:23-cv-01195-JLS-SK, 2024 U.S. Dist. LEXIS 135068, 2024 WL 3588043, at *7 (C.D. Cal. Jul. 30, 2024) (rejecting plaintiff's claim of authorship of news footage in which he was interviewed), *aff'd*, 2026 U.S. App. LEXIS 3633 (9th Cir. 2026); *see also Garcia v. Google, Inc.*, 786 F.3d 733, 743-44 (9th Cir. 2015) (en banc) (rejecting co-authorship claim of actress in a movie) ("[h]owever one might characterize [her] performance, she played no role in fixation").

This result is not altered by the fact that Plaintiff registered a claim of copyright in the interview with the Copyright Office. Under 17 U.S.C. § 410, "[i]n any judicial proceedings[,] the certificate of a registration *made before or within five years after first publication of the work* shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *Id.* (emphasis added). Plaintiff's registration is No. PAU004259370, obtained in 2025, more than five years after publication of excerpts of the 2017 interview. FAC, ¶ 99; *see also* KGET ***2019*** re-broadcast of excerpts of interview first aired in 2017, available at https://www.kget.com/news/ jaime-osuna-convicted-murderer-suspected-of-killing-cellmate/. As such, there is no presumption of correctness of the facts stated in the registration certificate, including the claim that Plaintiff owns the copyright. The FAC's infringement claim as to the 2017 interview should be dismissed.

The claim fails to the extent it is based on Plaintiff's letters.

The infringement claim fails with respect to Plaintiff's letters because the Podcast's references to them were fair uses. Infringement claims may be dismissed at the pleading stage when, taking the allegations in the complaint as true, the secondary use is fair as a matter of law. *McGillvary*, 2024 U.S. Dist. LEXIS 135068 at *22-26 (dismissing infringement claim on the ground that a true crime documentary's use of interview footage of the plaintiff was fair use);

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

*Stebbins v. Google LLC*, 2023 U.S. Dist. LEXIS 169937, *16 (N.D. Cal. Aug. 30, 2023) ("'fair use may be considered on a motion to dismiss'") (quoting *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008)). Examples of fair uses listed in the preamble of 17 U.S.C. § 107 are "criticism, comment, news reporting, teaching … scholarship, or research." *Id.*

Section 107 specifies four non-exclusive factors that must be weighed to determine whether a particular use is fair: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect of the use on the market for the original. *Id.* Here, Defendant's news reporting, commentary and criticism fall within recognized categories of fair use, and each of the fair use factors weighs in Defendant's favor.

(a) Purpose and character of the use

Under the first factor, which examines the purpose and character of the defendant's use, courts evaluate (i) whether the defendant's use is transformative and (ii) whether it is commercial in nature, with transformativeness as "the 'central' question." *Hachette Book Grp. v. Internet Archive*, 115 F.4th 163, 179 (2d Cir. 2024). A defendant's use is transformative if it has a "further purpose" than that for which the original work was created, or has a "different character." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 529 (2023).

Clearly the Podcast's use of Plaintiff's letters to the D.A. serves a different purpose than the originals. Plaintiff's purpose was to send death threats to the District Attorney, and to taunt the D.A. by hinting that Plaintiff committed other unsolved murders, whereas the Podcast quoted the letters to show Plaintiff's violent character. *Norse v. Henry Holt & Co.*, 847 F. Supp. 142, 145 (N.D. Cal. 1994) (a biographical work "must, in order to be accurate, cite and quote things said by the subject[,] and said about him by others"). The same is true of the quotations from Plaintiff's letters to his ex-wife "Jane." Plaintiff sent those letters to threaten and intimidate her, whereas the Podcast quoted them to illustrate his propensity for threats and violence.

With respect to Plaintiff's letter to his newborn son, the Podcast shared the message for a different purpose than Plaintiff had in writing it. The note was written to communicate Plaintiff's thoughts to his son. The Podcast read the note to highlight the contrast between Plaintiff's

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

seemingly loving feelings toward his child and the shockingly violent nature of his crimes. Reading the note served a transformative purpose.

As to whether Defendant's use of the copyrighted work is commercial in nature, there is no allegation in the FAC that the Podcast used Plaintiff's letters for a commercial purpose. Even if it did, this subfactor is "'largely insignificant'" where the new work is "'substantially transformative.'" *Korman v. Free Beacon LLC*, 826 F. Supp. 3d 720, 734 (E.D. Va. 2026). The first factor weighs in favor of fair use.

(b) Nature of the copyrighted work

The second fair use factor encompasses two inquiries: (1) whether the work is published or unpublished; and (2) whether the work is creative or factual. *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 563-64 (1985). Creative and unpublished works are afforded greater protection. Even if the letters Plaintiff sent from jail are "unpublished," that is of little significance. The rationale for giving greater protection to unpublished letters is that "'the author's right to control the first public appearance of his expression weighs against such use of the work before its release.'" *Norse*, 847 F. Supp. at 146 (quoting *Harper & Row,* 471 U.S. at 564). The rationale has no application here, as copyright is not intended to allow criminal suspects control over publication of their death threats, and Plaintiff assumed the risk the letters would be publicly filed in court when he sent them to the D.A. The unpublished nature of the letters should be given no weight.

In addition, the letters to the D.A. and to Jane are not "creative" because their purpose is factual. They conveyed information about other murders he claimed to have committed, and his desire to intimidate and harm others. *Larson v. Dorland*, 693 F. Supp. 3d 59, 81 (D. Mass. 2023) (finding the creativity sub-factor was neutral where kidney donor's letter was "meant to convey factual information about non-directed kidney donation and [plaintiff's] own actions"). The second fair use factor is therefore neutral with respect to these letters.

Here, the second fair use factor is accorded little weight because Defendant's use was transformative. *See Marano v. Metro. Museum of Art*, 472 F. Supp. 3d 76, 86 (S.D.N.Y. 2020) ("While ordinarily the creative nature of the Photo would weigh in favor of the copyright holder,

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

the second factor has limited weight in this analysis because the transformative purpose of the Met's use 'was to emphasize the [Photo's] historical rather than creative value.'"); *see* 17 U.S.C. § 107. As to Plaintiff's note to his son, the second factor weighs only minimally against fair use.

(c) Amount and substantiality of the portion of the work used

In evaluating the third factor, "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," 17 U.S.C. § 107(3), a court considers not only how much was used, but "whether the quantity and value of the materials used[] are reasonable in relation to the purpose of the copying." *Cariou v. Prince*, 714 F.3d 694, 710 (2d Cir. 2013). The secondary use "must be permitted to conjure up at least enough of the original to fulfill its transformative purpose." *Id.* (cleaned up); *see Campbell v. Acuff-Rose Music*, 510 U.S. 569, 586-87 (1994) ("the extent of permissible copying varies with the purpose and character of the use").

Here, the Podcast quotes selected phrases from Plaintiff's threatening letters to Jane and the D.A., and, in the case of the letters to the D.A., verbally describes the visual images they contain. Even assuming that anything protectable was taken from these letters (not the case), the Podcast's use of these excerpts was reasonably necessary to achieve Defendant's purpose of reporting and commentary. *See Savage v. Council on American-Islamic Relations, Inc.*, 2008 U.S. Dist. LEXIS 60545, *20 (N.D. Cal. Jul. 25, 2008) (third fair use factor favored defendants who copied excerpts of radio show; "defendants used the audio excerpts to comment on and rebut derogatory statements . . . and the amount used . . . was reasonably necessary to convey the extent of plaintiff's comments"). The third factor weighs in favor of fair use as to these letters.

As to Plaintiff's note to his son, repeating the entire message was reasonable in relation to Defendant's purpose of news reporting and commentary. The note was reasonably used as a historical artifact in the story of one of Kern County's most notorious killers. *Swatch Group Mgmt. Servs. v. Bloomberg L.P.*, 756 F.3d 73, 90 (2d Cir. 2014) (third factor was neutral where defendant used entire recording of publicly traded company's earnings call; "the public interest in the information contained in the recording 'is better served by the dissemination of that information in its entirety'"). The third fair use factor is neutral with respect to Plaintiff's note.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

(d) Effect of the use on the market for the original

The fourth fair use factor examines "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). There is no effect on the market for the work where the secondary use is "transformatively different from the[] original expressive purpose." *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 614-15 (2d Cir. 2006). Indeed, it is settled that "a copyright holder cannot prevent others from entering fair use markets merely by developing or licensing a market for … news reporting, educational or other transformative uses of its own creative work." *Id.* (cleaned up). Here, the only reasonably likely markets for Plaintiff's letters and note are for news reporting, commentary or criticism.

"Where the allegedly infringing use does not substitute for the original and serves a 'different market function,' such factor weighs in favor of fair use." *Ted Ent., Inc. v. Saber*, 2026 U.S. Dist. LEXIS 167398, *24 (C.D. Cal. June 29, 2026) (cleaned up) (quoting *Campbell*, 510 U.S. at 591). In *Ted Entertainment*, the district court held the defendant's livestream commentary and criticism of a documentary was not a market substitute for the film because it incorporated "live chat interaction, sharp criticism throughout and extrinsic source material." *Id.* at *24-25. Similarly here, Defendant's use of the note and excerpts of Plaintiff's letters, accompanied by "reaction," "sharp criticism" and/or "extrinsic source material," is not a market substitute for the works themselves. *Id.* Thus, the fourth factor weighs decidedly in favor of fair use.

With respect to the letters to the D.A. and Plaintiff's wife, because all of the fair use factors with the exception of the second weigh heavily in Defendant's favor, and because the second factor is neutral, the use of Plaintiff's letters is fair as a matter of law. With respect to Plaintiff's note to his son, because the most important factors, the first and fourth, weigh in Defendant's favor, and because the second factor weighs only slightly against fair use and the third factor is neutral, the use is fair as a matter of law. *Philpot v. Media Research Ctr. Inc.*, 279 F. Supp. 3d 708, 722 (E.D. Va. 2018) (use of photos was fair when first and fourth factors weighed in defendant's favor, second was neutral, and third weighed slightly against fair use).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**2. The claim fails to the extent it is based on Plaintiff's photograph.**

The infringement claim is also barred by fair use to the extent it alleges infringement of Plaintiff's photograph. The FAC alleges the Podcast infringes on a single photograph registered with the Copyright Office as number VAu001547474, titled "Jamie Osuna's Mall Photo." ¶¶ 9, 52. The FAC does not attach a copy of this photo or describe the image in any way, and therefore fails to provide notice to Defendant and the Court as to which photograph was infringed: one of the color photographs in the foreground of the Podcast webpages, or one of the grayscreened photos in the background. In any event, the infringement claim fails because the Podcast makes fair use of all the images. The use serves the purposes of commentary and reporting on Plaintiff's background, and each statutory factor weighs in Defendant's favor.

(a) Purpose and character of the use

As noted above, the webpage for each Podcast episode featured a color photograph superimposed on a collage of greyscreened photos. The color photo in Episode 3 was a picture of Plaintiff as a small boy, next to an overturned bucket of red paint.[2] Defendant's use of the Episode 3 Photo is transformative because it serves a further purpose than the original and is of a different character. *Andy Warhol Found.*, 598 U.S. at 529; *Whyte Monkee Prods., LLC v. Netflix, Inc.*, 174 F.4th 761, 795 (10th Cir. 2026) (documentary's use of video clip of Joe Exotic's remarks at husband's funeral was fair use); *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 24 (1st Cir. 2000) (use of photograph of beauty pageant winner who posed nude, in articles on controversy over nude photos, was fair); *Korman*, 826 F. Supp. 3d at 733 (studio portrait of Alexandria Ocasio-Cortez was used for transformative purpose on political journalism website). The original portrait was taken to serve as a family keepsake, whereas the Podcast uses it to comment on Plaintiff's upbringing and evolution into a murderer.

[2] The other three color photos of Plaintiff used in the Podcast were: a still image of Plaintiff being interviewed in jail in 2017 (Ep. 5) taken by KGET; a mug shot of Plaintiff in an orange jumpsuit (Ep. 6), likely taken by CDCR; and a wedding photo of Plaintiff and his ex-wife (Ep. 2), apparently taken at Plaintiff's grandmother's home. (Ep. 2, 10:48-11:16). The remaining two color photos were LaVoice wearing a jail visitor's badge (Ep. 1) and Pena (Ep. 4).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Importantly, LaVoice begins the episode by commenting on the chilling nature of the Episode 3 Photo when juxtaposed with the crime scene photo. Courts have recognized that "commentary or criticism that targets an original work may have compelling reason to '"conjure up"' the original by borrowing from it." *Whyte Monkee Prods.*, 174 F.4th at 793 (quoting *Andy Warhol Found.*, 598 U.S. at 532).[3] In addition to being the target of LaVoice's commentary, the Episode 3 Photo serves as a biographical anchor as she reports on Plaintiff's violent childhood. She repeatedly asks whether he would have become a murderer if he had not experienced such an abusive upbringing. Plaintiff's innocent childhood photo evokes this question. Biographical anchors such as these are well recognized examples of fair use. *Bill Graham Archives*, 448 F.3d at 609 (use of thumbnail images of concert posters in biographical book on the Grateful Dead was transformative because the images were "historical artifacts" to document the group's live performances); *see also Korman*, 826 F. Supp. 3d at 733 (use of Ocasio-Cortez's political portrait in article criticizing her hypocrisy and elitism was fair). The use of the photo is transformative.

Similarly, Defendant made transformative use of each of the grayscreened photos in the background collage that appears in each episode. They are photographic images of Plaintiff as a child or adult and show Plaintiff's transformation from innocent-looking boy to hardened criminal. They are not used for the purpose for which they were originally created; they are historical artifacts in a biographical look at one of Kern County's most notorious murderers. Defendant's use has a different purpose and character and is highly transformative.

With respect to the commerciality subfactor under the first fair use factor, even if the Podcast could be considered commercial in nature, this subfactor is accorded little weight because the use of photos in the Podcast is "'substantially transformative.'" *Korman*, 826 F. Supp. 3d at 734. Thus, the first fair use factor weighs heavily in favor of Defendant.

---

[3] Such "targeting" is not necessary for a use to be transformative. *See id.* at 793-95 (film's use of a video clip of Joe Exotic speaking at his husband's funeral to illustrate Exotic's narcissistic personality was transformative, even though the documentary did not comment on the video).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

(b) Nature of the copyrighted work

Even if the Episode 3 Photo and the photos in the collage were unpublished, that carries little weight because Defendant's use was highly transformative. "'[T]he second factor may be of limited usefulness' where the work 'is being used for a transformative purpose.'" *Korman*, 826 F. Supp. 3d at 735 (quoting *Bouchat v. Balt. Ravens Ltd. P'ship*, 619 F.3d 301, 315 (4th Cir. 2010)) (second fair use factor "largely insignificant" where plaintiff's studio portrait was used for transformative purpose). In addition, the photos are both creative and factual, and the creativity sub-factor therefore does not weigh in favor of or against fair use. *Id.* at 735-36 (finding second fair use factor was neutral where studio portrait of politician was both creative and factual). Given the reduced weight afforded the unpublished nature of the work, and the neutral status of the creativity subfactor, the second factor weighs only slightly against fair use.

(c) Amount and substantiality of the portion used

The third factor looks at whether the amount used was "reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. Even when the entirety of a work is used, "such copying does not necessarily weigh against fair use because copying the entirety of a work is sometimes necessary to make a fair use of the image." *Bill Graham Archives*, 448 F.3d at 613; *Nunez*, 235 F.3d at 24 (newspaper's use of entirety of controversial photo was fair use; "to copy any less than that would have made the picture useless to the story"); *Whiddon v. Buzzfeed, Inc.*, 638 F. Supp. 3d 342, 354 (S.D.N.Y. 2022) (secondary user "may copy the original in its totality where a full copy is reasonably appropriate to the secondary work's transformative purpose").

Here, Defendant's use of the entire Episode 3 Photo was reasonable in relation to its transformative purpose. Episode 3 led off with LaVoice's commentary on Plaintiff's childhood photograph depicting the spilled bucket of red paint; using the complete image was "reasonable and appropriate" to accurately represent the photo. *Whiddon*, 638 F. Supp. 3d at 355-56 (news website reporting on a controversy surrounding social media influencer's post about her motorcycle accident made fair use of three photographs appearing in her post); *Clark v. Transp. Alternatives, Inc.*, 2019 U.S. Dist. LEXIS 46274, *3, 12 (S.D.N.Y. Mar. 18, 2019) (website's reproduction of entirety of newspaper photo of e-bike was fair). In addition, keeping the image onscreen throughout

the episode, in which LaVoice reported on Plaintiff's troubling background, was reasonable in relation to Defendant's transformative purpose.

Similarly, the use of the background collage photos was reasonable in relation to Defendant's transformative purpose. The images are assembled into a collage; they are heavily grayscreened to the point where it is difficult to make out Plaintiff's face in many of them; and many are partially obscured by text and graphics and by the color photo in the foreground. *Bill Graham Archives*, 448 F.3d at 611 (use of thumbnail images of concert posters in book on Grateful Dead was fair, where the publisher "combin[ed] them with a prominent timeline, textual material, and original graphical artwork, to create a collage of text and images on each page of the book"). The third factor weighs in favor of fair use.

(d) Effect of the use on market for the original

Again, there is no effect on the market for any of the photographs because the secondary use is "transformatively different from the[] original expressive purpose." *Bill Graham Archives*, 448 F.3d at 614-15; *Ted Ent.*, 2026 U.S. Dist. LEXIS 167398 at *24. The only reasonably likely markets for the photos are fair use markets such as news reporting, commentary or criticism.

In addition, Defendant superimposed the Episode 3 Photo on a grid containing grayscreen copies of photographs of Plaintiff's tattoed adult face, next to the title, "The Devil Doesn't Get Hurt," and accompanied it with LaVoice's narration. Because the image is used alongside "reaction," "sharp criticism," and "extrinsic source material," the use is not a market substitute for the photo itself. *Id.* at *24-25. The background collage photos are even less likely to serve as market substitutes because they are heavily grayscreened and many are partially obscured. *Boesen v. United Sports Publs., Ltd.*, 2020 U.S. Dist. LEXIS 203682, *15 (E.D.N.Y. Nov. 2, 2020) (fair use found where defendant used "a cropped low-resolution version of the photograph that would be a poor substitute for the original"). The fourth factor weighs in favor of fair use.

Because all of the fair use factors with the exception of the second weigh heavily in Defendant's favor, and because the second factor weighs only slightly against fair use, the Podcast's use of the photographs are fair as a matter of law.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**3. The allegations regarding infringement of unspecified "artwork" fail to plausibly allege a claim.**

The FAC further alleges the Podcast infringes Plaintiff's copyrights in unspecified "artwork." *Id.* ¶¶ 9, 52. Because the FAC does not identify the allegedly infringed artwork(s), it cannot plausibly allege substantial similarity. *Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 166 (S.D.N.Y. 2024) ("vague and conclusory allegations of unspecified copying are insufficient as a matter of law" to plausibly plead substantial similarity).

**C. THE LIBEL/LIBEL PER SE CLAIM FAILS AS A MATTER OF LAW.**

The FAC alleges Defendant libeled Plaintiff by "authorizing or ratifying" the following statements, *id.* at ¶ 72, or by making the statements directly: (1) "falsely publishing Pl[aintiff] raped Pena," *id.* ¶ 65; (2) "publishing that Pl[aintiff] 'admitted to killing' in Case No. 19CM-1882 despite no public or in-court confession," *id.* ¶ 66; (3) publishing statements from another inmate "alleging premeditation in 19CM-1882," *id.* ¶ 67; (4) using crime scene photos that LaVoice was not authorized to possess to "suggest premeditation and compare Pl[aintiff] to serial killers," *id.* ¶ 68; (5) "publishing unverified allegations from Pl[aintiff's] ex-wife alleging domestic and child abuse," *id.* ¶ 69; (6) "labeling Pl[aintiff] 'manipulative' and 'evil'" and "suggesting his [mental] illness was 'just another identity of his,'" *id.* ¶ 70; and (7) "labeling Pl[aintiff] a 'monster,' 'cold-blooded,' 'notorious killer,'" *id.* ¶ 71. The claim must be dismissed for the following reasons.

**1. Plaintiff is libel proof.**

The libel claim fails because Plaintiff has no reputation left to damage, and is libel proof as a matter of law. The doctrine was applied in *Wynberg v. National Enquirer*, 564 F. Supp. 924, 928 (C.D. Cal. 1982) ("An individual who engages in certain anti-social or criminal behavior and suffers a diminished reputation may be 'libel proof' as a matter of law, as it relates to that specific behavior."), and is recognized in numerous other jurisdictions. *Cardillo v. Doubleday & Co.*, 518 F.2d 638, 639 (2d Cir. 1975) ("we consider as a matter of law that appellant is … libel-proof"); *Ray v. Time, Inc.*, 452 F. Supp. 618, 622 (W.D. Tenn. 1976) (killer of Dr. Martin Luther King, Jr. was libel proof); *Davis v. Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001) ("the 'libel-proof' doctrine … has often been applied in a situation where the plaintiff's complaint is that the

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

publication accused him of the wrong crimes"); *Lamb v. Rizzo*, 242 F. Supp. 2d 1032, 1033, 1038 (D. Kan. 2003) (inmate convicted of kidnapping and murder could not maintain libel claim against journalist for inaccurately reporting he was convicted on additional charge of rape); *Jackson v. Longcope*, 394 Mass. 577, 580, 582 (Mass. 1985) (inmate convicted of and under indictment for series of "hitch-hike" murders not entitled to maintain libel claim for alleged inaccurate report that all victims were raped and strangled, as opposed to some).

A notorious murderer such as Plaintiff has no reputation to harm. He pleaded guilty to and was convicted of torturing, mutilating and murdering Pena. He is facing trial for the horrific murder of Romero in what the *L.A. Times* called "one of the most heinous slayings inside the California prison system." Request for Judicial Notice, Ex. 11. Thus, the Podcast's reporting that the authorities told Pena's sister that Plaintiff had raped her (Ep. 4, 25:17-25:33), even assuming for the sake of argument only that this statement was inaccurate, could not further damage Plaintiff's reputation because he admitted to torturing and mutilating Pena.

As for the additional statements Plaintiff alleges are libelous, it would not make a difference in public opinion of Plaintiff whether the horrific acts committed in his prison cell at Corcoran were "premeditated" or whether he admitted them. Jane's statements that he committed domestic violence and child abuse would also have no impact on his reputation. And comparing Plaintiff's childhood to those of serial killers John Wayne Gacy and Richard Ramirez (Ep. 3, 31:37-32:07), is similarly not actionable because the Podcast did not accuse Plaintiff of being a serial killer, and in any event, Plaintiff admitted on camera to committing multiple murders.[4]

**2. <u>The FAC fails to plausibly allege actual malice.</u>**

Because Plaintiff is a limited public figure, he must plead and prove Defendant made defamatory statements about him with actual malice. *See Denney v. Lawrence*, 22 Cal. App. 4th 927, 935-36 (1994) (twin brother of convicted murderer was limited public figure where he voluntarily gave press interviews on brother's case); *Rosanova v. Playboy Enters.*, 411 F. Supp. 440, 445 (S.D. Ga. 1976) (businessman labelled a "California mobster" in news article was public

[4] Statements made in the Podcast that Plaintiff is "manipulative," "evil," a "monster," and "cold-blooded" are opinion and not actionable, and the statement that he is a "notorious killer" is true.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

figure due to his longstanding contacts with underworld figures; "Mr. Rosanova voluntarily engaged in a course that was bound to invite attention and comment."), *aff'd*, 580 F.2d 859 (5th Cir. 1978), *cited with approval in Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 926-27 (9th Cir. 2022).

Actual malice must be established by showing the defendant's statement was published "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). This standard is a "demanding burden" because "general allegations that a defendant should have known or should have investigated the truth of his or her statements do not adequately plead actual malice." *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014) (dismissing slander claim where plaintiff pleaded conclusory allegations that defendant harbored serious doubts as to truth of statements).

The FAC pleads in conclusory fashion that "LaVoice and KGET17 acted negligently and, in many instances, with actual malice, knowledge of falsity, or reckless disregard for truth," regarding statements made in the Podcast, including Pena's sister's statement that investigators told her Plaintiff raped Pena. *Id.* at ¶ 73. However, the only allegation of fact Plaintiff pleads in support of actual malice is that "Pl[aintiff] was never charged, tried, or convicted of rape." *Id.* ¶ 65. Where a plaintiff challenges the defendant's statement that he committed a criminal act, merely alleging the plaintiff was not criminally charged does not, without more, plausibly allege actual malice. *Tallman v. Spencer*, 2025 U.S. Dist. LEXIS 84133, *7 (D. Or. Apr. 14, 2025) (plaintiff failed to plausibly allege that defendant who called plaintiff a "predator" who "victimized children" acted with actual malice where plaintiff was investigated for child molestation but not charged) ("allegations that [authorities concluded] charges were unfounded, and that [defendant] knew that [plaintiff] was not charged, are insufficient to plausibly allege actual malice"); *Wynn*, 75 F. Supp. 3d at 1239 ("Wynn publicly denied that it had committed FCPA violations, and … the SEC and other agencies found that Wynn did not commit any violations. … [b]ut this evidence does not definitely prove that [defendant] Chanos acted with malice, as the fact that the SEC ultimately did not find Wynn in violation of the FCPA does not mean that Wynn committed no FCPA violations whatsoever."). Because the FAC fails to plausibly allege actual malice, the libel claim must be dismissed.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

### D. THE INVASION OF PRIVACY CLAIM FAILS AS A MATTER OF LAW.

The constitutional privacy claim fails because the alleged private information published by Defendant is newsworthy. A California Constitutional right to privacy claim requires the plaintiff to establish (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35-37 (1994); *Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125, 1129 (2009) (same). "Four distinct kinds of activities have been found to violate this privacy protection," including "public disclosure of private facts." *Moreno*, 172 Cal. App. 4th at 1129.

Here, Plaintiff's constitutional privacy claim is based on Jane's comments that her pregnancy resulted from what she thought was a one-night stand, and that Plaintiff stated in therapy sessions that he had been sexually molested as a child. The claim must therefore be viewed as a claim for public disclosure of private facts. *Id.* Such a claim fails where, as here, the publication is newsworthy. *Wasser v. San Diego Union*, 191 Cal. App. 3d 1455, 1460 (1987). To determine newsworthiness, courts look at the social value of the publication, the degree of intrusion, and the "extent to which the plaintiff played an important role in public events." *Shulman v. Group W Productions, Inc.*, 18 Cal. 4th 200, 222 (1998). A notorious criminal is thus subject to greater intrusions of his privacy than other public figures. *See id.* at 222-23 ("*Revelations that may properly be made concerning a murderer* or the President of the United States would not be privileged if they were to be made concerning one who is merely injured in an automobile accident.'") (quoting Restatement of Torts 2d § 652D cmt. h.) (emphasis added).

Ultimately, a court must "assess[] the logical relationship or nexus, or the lack thereof, between the events or activities that brought the person into the public eye and the particular facts disclosed." *Id.* at 224. This analysis requires "considerable deference to reporters and editors, avoiding the likelihood of unconstitutional interference with the freedom of the press to report truthfully on matters of legitimate public interest." *Id.* at 224-25.

Here, Jane's statements about how she became pregnant have a logical relationship to the subject matter of the Podcast, which reports that Plaintiff was released from prison in October 2011,

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

days before murdering Pena, (Ep. 2, 14:43-15:02) and spent that time terrorizing his estranged wife with threatening phone calls before telling her he murdered someone at the El Morocco Motel. (*Id.*, 15:12-16:42; 16:51-17:02) ("'First thing out of his mouth, "Watch the news, bitch. I killed a woman at the Morocco."'"). After he was arrested for the murder, officers interrogating him remarked that Pena resembled Jane, and a law enforcement officer suggested he may have acted out of rage against his estranged wife. (*Id.*, 18:43-19:25; 20:19-20:50).

Given Plaintiff's threats and violence against Jane, Jane's reasons for marrying such a man were highly relevant to the subject matter of the Podcast. Jane told LaVoice she met him at a party and, after he was released from jail, spent the night with him at a motel and became pregnant, thus leading to their marriage (*Id.*, 7:13-7:51). Recounting how Jane became pregnant had a "logical relationship" to the subject of the Podcast. *Shulman*, 18 Cal. 4th at 224-25.

Similarly, Jane's statement that Plaintiff had said in couples therapy that he had been molested as a child (Ep. 3, 24:33-24:47) is logically related to examining the effect his abusive childhood may have had on his becoming a violent criminal. (*Id.*, 26:16-27:07) (forensic psychologist's theorizing that Plaintiff's rage at his mother for not protecting him from abuse may have contributed to his becoming a murderer). *Shulman*, 18 Cal. 4th at 224-25. Because they are newsworthy, the disclosure of these facts is not an actionable invasion of privacy. *Id.*

### E. THE FALSE LIGHT CLAIM FAILS AS A MATTER OF LAW.

"A 'false light' claim, like libel, exposes a person to hatred, contempt, ridicule, or obloquy and assumes the audience will recognize it as such." *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1264 (2017) (cleaned up). "'When a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action.'" *Id.* (cleaned up). Because the defamation claim fails as a matter of law, the false light claim should be dismissed.

### F. THE UNFAIR COMPETITION CLAIM FAILS AS A MATTER OF LAW.

Section 17200 prohibits "unfair competition," which is defined to "mean and include any unlawful, unfair or fraudulent business act or practice." *Id.* Plaintiff's § 17200 claim is based on Defendant's alleged "promoting [of] MWATF as unbiased journalism while omitting exculpatory

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

facts," "validat[ing] defamatory narratives," "us[ing] sealed records for profit," "exploitation of Pl[aintiff]'s name, image, and life story," "preventing Pl[aintiff] from profiting from his own narrative," and "broadcast[ing] Pl[aintiff]'s interview footage and life story without compensation." FAC ¶¶ 101-104. None of these allegations give rise to a § 17200 claim.

First, a claim under Section 17200 that is derivative of a libel claim "stands or falls" with the underlying claim. *Med. Marijuana, Inc. v. ProjectCBD.com*, 46 Cal. App. 5th 869, 895-96 (2020) (cleaned up). Because Plaintiff's libel claim fails, the section 17200 claim fails to the extent it is based on the libel count. *See* FAC ¶¶ 101, 103.

Second, publishing excerpts of the jailhouse interview and Plaintiff's name, image, and life story "without compensation" are not actionable under Section 17200 claim because Defendant required no authorization from Plaintiff to publish them. *See* Findings and Recommendations (ECF #26), 9:20-10:4 ("Defendants' use of Plaintiff's likeness falls squarely within section 3344(d)'s exceptions for use in connection with both news and public affairs.").

Third, as to all the asserted grounds for Plaintiff's § 17200 claim, Plaintiff lacks statutory standing. "[T]o maintain a claim under the UCL, Plaintiff must show that he has 'suffered injury in fact and has lost money or property as a result of unfair competition.'" *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1172 (E.D. Cal. 2007) (quoting Cal. Bus. & Prof. Code § 17204). "[T]o have standing to assert any UCL claim, Plaintiff must show either prior possession or a vested legal interest in the money or property allegedly lost." *Id.* The FAC does not plead that Plaintiff lost any money or property of which he has possession or a vested legal interest. FAC ¶¶ 101-105. Because Plaintiff lacks standing, the § 17200 claim should be dismissed.

**G. <u>THE CONSPIRACY CLAIM FAILS AS A MATTER OF LAW</u>**

"As is 'well established' under California law … 'civil conspiracy is not an independent tort.'" *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1196-1197 (C.D. Cal. 2001) (citation omitted). "Rather, it is a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Id.* (cleaned up). Co-conspirator liability cannot be imposed when there is no "commission of an actual tort." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503,

511 (1994). Here, the conspiracy count fails because it is not a standalone cause of action; and many of the alleged wrongdoings pleaded in the conspiracy count are embraced by the FAC's libel claim, which fails as a matter of law. FAC, ¶¶ 106-107. The remaining alleged wrongdoings pleaded in this count are not torts. *Id.* The conspiracy count must be dismissed.

## III. <u>PLAINTIFF LACKS ARTICLE III STANDING FOR THE RESCISSION CLAIM.</u>

The FAC alleges Plaintiff lacked capacity to execute an agreement consenting to the 2017 interview because "he had no less than 32 mental health proceedings, was under active psychiatric care, [and] was force-prescribed maximum-dose antipsychotic medications[.]" FAC ¶ 97. The FAC also alleges defendants exercised "undue influence" in obtaining his agreement and Plaintiff executed it under "duress." *Id.* ¶ 98. He claims not to know whether the agreement was verbal or written, or any of its terms, *id.*, but asks the Court to rescind it. *Id.* ¶ 100.

Plaintiff lacks Article III standing to bring this claim. "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (cleaned up). To satisfy standing requirements, a plaintiff must show that "it is likely … that the injury will be redressed by a favorable decision." *Id.* (cleaned up). "Redressability depends on whether the court has the ability to remedy the alleged harm." *Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n.*, 457 F.3d 941, 955 (9th Cir. 2006).

Plaintiff lacks Article III standing to seek rescission of the alleged agreement because the interview has already occurred and been published, and rescinding the agreement will have no practical effect. While Plaintiff seeks to rescind any authorization he gave for use of his "likeness," *id.* ¶ 100, no such authorization was or is needed. *See* Findings and Recommendations (ECF # 26), 9:20-10:4. The claim should be dismissed. Fed. R. Civ. P. 12(b)(1).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**IV. <u>CONCLUSION</u>**

Defendant's Motion to Dismiss should be granted in its entirety, without leave to amend.

DATED: September 9, 2026

BALLARD SPAHR LLP

By: */s/ Robert S. Gutierrez*
Robert S. Gutierrez

Attorneys for Defendants NEXSTAR MEDIA INC.